[No. A082174. First Dist., Div. Four. Oct. 30, 1998.]

In re the Marriage of VIOLA M. and LEVI B. GARCIA.
VIOLA M. GARCIA, Appellant, v.
LEVI B. GARCIA, Respondent.

COUNSEL

Bruce K. Tarkington for Appellant.

Joseph L. Naegele for Respondent.

OPINION

**REARDON, J.**—This is an appeal from a judgment on appellant's order to show cause (OSC) to establish, and direct payment of, child and spousal support arrearages. What is unusual is that the OSC was brought nearly 30 years after final judgment of divorce was entered. We must decide which version of the family law enforcement statutes, and which particular provisions, apply to the situation at hand. We conclude that the pre-1993 enforcement scheme applies, but that within that scheme, the trial court misinterpreted and misapplied various provisions. Accordingly, we reverse the judgment and remand for a further hearing and resolution compatible with teachings of this opinion.

## I. FACTS

Appellant Viola M. Garcia and respondent Levi B. Garcia married on December 28, 1950, and separated on September 1, 1961. The interlocutory judgment of dissolution, filed June 10, 1966, directed Levi to pay Viola $200 per month in child support for their four children,[1] and $25 a month in spousal support, until further order of the court. Final judgment of divorce was entered December 21, 1967.

Levi remarried December 23, 1967. From 1966 to 1972 Levi paid support totaling $6,750 to the Family Support Division of the Alameda County District Attorney's Office (Family Support Division).[2] Levi did not seek to modify the judgment nor did Viola seek to enforce it until January 30, 1997, when she filed the OSC. She asked for arrearages and interest in the amount of $65,645.14. Pursuant to stipulation, the parties terminated the spousal support order on March 18, 1997.

---

[1]Dates of birth are as follows: November 1, 1951; April 5, 1953; December 18, 1954; and July 14, 1960.

[2]Viola testified that she "received welfare." A deputy district attorney for Alameda County submitted a declaration that the county had no present claim for recovery of any support assigned to it as a result of past services. These facts stimulate questions that were not answered at trial: Levi raised the matter of Viola's standing to enforce obligations which she "previously . . . assigned" in his settlement conference statement, but did not pursue it further at trial. Additionally, we do not know if Viola received welfare assistance *after* 1972.

On the matter of arrearages for child support, the trial court found that under Civil Code, former section 4383,[3] the judgment had expired on July 15, 1991—10 years and 1 day after her youngest child attained the age of majority—and thus Viola was no longer entitled to enforce it. As to enforcement of the spousal support order for the period of June 10, 1966, to March 18, 1997, the court denied Viola's request on the basis of former section 4383 as well as laches. This appeal followed.

## II. DISCUSSION

The current Family Code provisions concerning enforcement of support awards confer a perpetual right to enforce collection of support until all arrearages are paid in full. (Fam. Code, §§ 4502, 5100, 5101.) Viola insists that these provisions apply to the present proceeding. Levi, on the other hand, insists that the trial court accurately interpreted and applied former section 4383. Both are wrong. As we explain, the law has changed dramatically since 1993 and therein lies the weakness of Viola's argument. Further, the trial court incorrectly interpreted former section 4383 as a statute of limitations, erroneously determined that that statute governed the main issues in this proceeding and did not take heed where it properly did pertain.

### A. Enforcement of Support Orders, Pre- and Post-1993

Prior to 1993, a judgment for child or family support could be enforced by writ of execution without prior court approval until five years after the child reached majority, and thereafter only as to amounts that were not more than ten years overdue. A judgment for spousal support could be enforced by writ of execution without prior approval for amounts not more than 10 years overdue. (Former § 4383, subd. (a).) Beyond these time frames, the trial court had discretion to determine whether to allow enforcement of the judgment. In making this determination, the trial court was required to consider the lack of diligence in pursuing enforcement for more than these specified periods. (Civ. Code, former § 4384, repealed by Stats. 1992, ch. 162, § 3, p. 464, operative Jan. 1, 1994 (hereafter, former section 4384).)

Then in 1992 the Legislature decreed that (1) a judgment for child or spousal support was exempt from any requirement that judgments be renewed; and (2) such judgment, including lawful interest and penalties, "is

---

[3]This statute read in part: "[A] judgment, order, or decree for the payment of child [support or family] support may be enforced by a writ of execution without prior court approval until five years after the child reaches the age of majority and, thereafter, for amounts that are not more than 10 years overdue on the date of application therefor. A judgment, order, or decree for the payment of spousal support may be enforced by a writ of execution without prior approval for amounts that are not more than 10 years overdue on the date of the application for the writ. . . ." (Civ. Code, former § 4383, subd. (a), repealed by Stats. 1992, ch. 162, § 3, p. 464, operative Jan. 1, 1994 (hereafter, former section 4383).)

enforceable until paid in full." (Civ. Code, former § 4384.5, added by Stats. 1992, ch. 718, § 3, pp. 3319-3320; amended by Stats. 1993, ch. 876, § 1, operative Jan. 1, 1994, and continued without substantive change in Fam. Code, § 4502, which adds a new reference to "family" support.) At the same time, the Legislature repealed former sections 4383 and 4384. And to further emphasize the new order, the Legislature also inserted the same intention in the general provisions for renewal and enforcement of judgments. Specifically, in 1992 it amended Code of Civil Procedure section 683.130 to provide that judgments for child or spousal support are exempt from renewal requirements and are enforceable until paid in full.[4] (Code Civ. Proc., § 683.130, as amended by Stats. 1992, ch. 163, § 30, pp. 739-740, operative Jan. 1, 1994; see Stats. 1992, ch. 718, § 4, p. 3320 [ch. 718 prevails].)

With these legislative changes, spousal and family support orders are enforceable in perpetuity until paid. The lack of diligence defense is gone, as is the trial court's discretion in deciding whether to enforce a judgment beyond the presumptively timely period for enforcement.

### B. *The Pre-1993 Scheme Applies*

The first question we must answer is: Which scheme applies to the present case? We conclude the pre-1993 scheme applies.

California embraces the general rule that statutes are construed against retroactive operation unless legislative intent to the contrary is apparent. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1206-1207 [246 Cal.Rptr. 629, 753 P.2d 585].) Responding to the contention that this canon of interpretation does not pertain to statutes that affect mere matters of procedure or remedy, our Supreme Court said this: "This reasoning . . . assumes a clear-cut distinction between purely 'procedural' and purely 'substantive' legislation. In truth, the distinction relates not so much to the form of the statute as to its effects. If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 394 [182 P.2d 159].)

Take, for example, a statute procedural in nature which nevertheless deprives a party of an existing defense to a claim. Under *Aetna*, immunity

---

[4]Viola states twice in her brief that Code of Civil Procedure section 683.130, "operative July 1, 1983," provides that support orders are enforceable until paid. These statements are very misleading. Yes, the statute was operative July 1, 1983, and yes, it now so provides. But this particular provision, stretching enforceability of support orders into perpetuity, was *first enacted in 1992* and represents a substantive and significant change relative to enforcement and renewal of support orders.

from suit would be comparable to a vested right. Indeed, in *Morris* v. *Pacific Electric Ry. Co.* (1935) 2 Cal.2d 764, 768 [43 P.2d 276], our Supreme Court held just that: "[T]he legislature may not, under pretense of regulating procedure or rules of evidence, deprive a party of a substantive right, such as . . . an absolute or a substantial defense which existed theretofore."

 Here, two facts of note would have pertained *prior to* the effective date of the new scheme. First, *all* of the child support installments and most of the spousal support installments would have been uncollectible without court approval. Second, had Viola sought court enforcement of support arrearages at that time, Levi would have been able to advance a lack of diligence defense as to *all* child support installments and most of the spousal support installments. Both of these points would have worked to Levi's significant advantage. Without question the new family law scheme operated on Levi's existing substantive rights by in effect eliminating a defense which had existed theretofore. This is because the legal effect of past events—i.e., the accrued arrearages—was changed by the new legislation.

We are mindful that the defense of lack of diligence, even if proved, was not absolute. Former section 4384 merely directed the trial court to *consider* lack of diligence in deciding whether to permit enforcement of the judgment. The statute did not direct how that consideration should be weighed in a given situation. Rather, the court retained discretion to make an ultimate determination based on lack of diligence and other factors that might arise on a case-by-case basis. Nevertheless, the ability to raise the defense and submit it to the trial court's discretion was tantamount to a vested right that was eliminated in 1993.

*C. The Trial Court Incorrectly Applied and Interpreted Former Section 4383 and Failed to Apply Former Section 4384*

 Having established that the pre-1993 law governs, the second question is: Did the trial court correctly interpret and apply that law? It did not. The trial court determined that former section 4383 was "effectively a statute of limitations" and governed all issues concerning arrearages in the instant proceedings. This determination was wrong for several reasons.

First, former section 4383 was not a statute of limitations. It set forth the times within which a former spouse could enforce a support order by writ of execution without court approval. Beyond those times, lack of diligence had to be considered by the court in determining whether to permit enforcement of support arrearages. (Former § 4384.)

The reviewing court in *In re Marriage of Wight* (1989) 215 Cal.App.3d 1590 [264 Cal.Rptr. 508] got it right when it explained: "[W]e do not agree

with appellant's characterization of Civil Code section 4383 as a 'statute of limitation,' as it does not set out a period after which a family law act judgment is unenforceable or after which an action thereon cannot be maintained; it only provides a procedure for enforcement by execution without the necessity of obtaining prior court approval." (*Id.* at p. 1594, fn. 4.)

Respondent relies on two cases for the mistaken proposition that former section 4383 operated as a statute of limitations. In *Puig v. Ryberg* (1991) 230 Cal.App.3d 141, 145 [283 Cal.Rptr. 604] (*Puig*), the reviewing court held: "Under section 4383, enforcement of a judgment for *all* accrued child support is available until the child reaches age 24. [Citation.] *Only after the child reaches that age does the 10-year limitations period apply.* [Citation.]" (Second italics added; see also *In re Marriage of Ryan* (1994) 22 Cal.App.4th 841, 850 [27 Cal.Rptr.2d 580], citing this proposition of *Puig*.) What respondent fails to see is that the 10-year period referred to in *Puig* is the 10-year statute of limitations for bringing an *independent* action on a judgment,[5] *not* the reference in former section 4383, subdivision (a) to execution as of right after a child reaches the age of majority plus five years as to "amounts that are *not more than 10 years overdue* . . . ." (Italics added.)

In any event, the court in *Puig* was *also* wrong because after the times for enforcement as of right expired, thereafter, per former section 4384, *enforcement was discretionary*. If enforcement was discretionary thereafter, upon consideration of lack of diligence in pursuing enforcement within the designated times, then the general 10-year statute of limitations for an action on a judgment would *not* pertain to family law proceedings such as this. Otherwise, former section 4384 would have no meaning. (See *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 988 [44 Cal.Rptr.2d 93] [specific statute relating to a particular subject governs that subject as against a more general statute, even though the latter, by itself, is comprehensive enough to include that subject].)

Second, it is clear from the foregoing discussion that former section 4384, not former section 4383, governs the question of enforcement of child support arrearages and spousal support arrearages accruing before March 13, 1987.

Third, the trial court failed to differentiate between spousal support arrearages accruing within 10 years of application for enforcement, and those that were more stale. Pursuant to former section 4383, Levi is liable for spousal

---

[5]Code of Civil Procedure section 337.5, subdivision 3. (See *Puig, supra,* 230 Cal.App.3d at pp. 145, 146.)

support installments due within the 10-year period immediately prior to Viola's OSC. The spousal support order called for $25 per month in spousal support "until further order of the court . . . ." That order was not terminated until March 18, 1997, upon the parties' stipulation. Even though Viola had never demanded her support, under former section 4383, enforcement of support installments amassing within 10 years of application was a matter of right. Thus, notwithstanding an overall lack of diligence in pursuing support, arrearages that were 10 years current were subject to execution.

For all these reasons we must reverse the judgment and remand for the trial court to exercise its discretion, taking into account the "lack of diligence for more than the period specified in Section 4383 in seeking enforcement of" the judgment. (Former § 4384.) ▇▇ We make several points for guidance on remand. First, the "lack of diligence" standard is not synonymous with the equitable doctrine of laches. Laches requires proof of delay which results in prejudice or change of position in the other party. (*Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 36 [40 Cal.Rptr.2d 137].) Former section 4384 does not require a finding of prejudice to the debtor spouse from the creditor spouse's lack of diligence in seeking enforcement. All that it specifically mandates is that the trial court consider lack of diligence. Beyond that, as the legislative committee comment suggested,[6] the trial court should look at the whole picture.

Second, the trial court nonetheless made findings on the issue of laches. With respect to child support, it found no prejudice to Levi, noting that he was not claiming lost records, unavailable witnesses or provision of custodial time. Of course, this should not be the whole inquiry under former section 4384. Lack of diligence, if proved, stands on its own as a consideration. The court can also look at other factors affecting the overall equities of the situation. For example, one observation that jumps out here is that the longer a creditor spouse, such as Viola, slumbers on her rights, the less mindful a debtor spouse, such as Levi, becomes of the fact that the interest clock is ticking on unpaid arrears. And that interest can become substantial over time. Here, Viola waited 30 years to enforce the support order and 25 years had passed since Levi last made a payment to the Family Support Division. She had two conversations with Levi after 1966, but did not mention support.

With respect to spousal support, the trial court concluded that ". . . Viola knew, or could have easily ascertained, the whereabouts of Levi but chose

---

[6]In particular, the legislative committee comment to former section 4384 states: ". . . Nothing in Section 4384 precludes the court from permitting enforcement after 10 years even though diligence is not shown if the court, in its discretion, determines that enforcement would be equitable in light of all the circumstances of the particular case." (Legis. committee com., Deering's Ann. Civ. Code (1984 ed.) § 4384, p. 87.)

not to have any contact (directly or indirectly) with Levi." Further, the court found that a 31-year delay in enforcement of the spousal support order would be prejudicial to Levi because he would have difficulty proving Viola's need or reduced need for support in light of her relationship, after the divorce, with another man who fathered two of her children. These findings, of course, will likewise pertain to the former section 4384 analysis.

Viola's request for attorney fees, if appropriate, should be addressed to the trial court.

We reverse the judgment and remand for further proceedings in accord with this opinion.

Hanlon, P. J., and Poché, J., concurred.