[No. F031759. Fifth Dist. Mar. 29, 2000.]

In re the Marriage of RITA MARIE and CHARLES THOMAS CUTLER.
RITA MARIE GREENE, Appellant, v.
CHARLES THOMAS CUTLER, Respondent.

## COUNSEL

Bill Lockyer, Attorney General, Roderick E. Walston and David P. Druliner, Chief Assistant Attorneys General, Carol Ann White and M. J. Hamilton, Deputy Attorneys General, for Appellant.

Wayne Silva for Respondent.

## OPINION

## KALASHIAN, J.*—

### STATEMENT OF THE CASE AND FACTS

Appellant Rita Marie Greene (hereafter Greene) and respondent Charles Thomas Cutler (hereafter Cutler) were married in approximately 1962 and had two children: Charles Thomas (hereafter Charles), born February 15, 1963, and Valerie Ann (hereafter Valerie), born November 13, 1964. Greene

*Judge of the Tulare Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

and Cutler separated in December of 1964. An interlocutory judgment of divorce was issued by the Los Angeles County Superior Court on June 6, 1966. Pursuant to the interlocutory decree, Greene was awarded custody of the children, and Cutler was ordered to pay the sum of $50 per child per month commencing on June 15, 1966, and continuing until the children "are of legal age or otherwise emancipated" or until further order of the court. On May 25, 1967, a final judgment of divorce was entered which continued in effect the provisions for support set forth in the interlocutory decree. The support judgment was never renewed or modified.

In 1966 Greene contacted the Los Angeles County District Attorney's Office seeking their assistance in enforcing the support judgment. The district attorney was able to collect $200 from Cutler, which equated to two months' worth of child support payments. The sum was forwarded to Greene. She did not receive any other child support payments. After a five-year effort, the Los Angeles District Attorney's Office ceased to pursue the matter and closed its file.

Cutler visited his children only three or four times after the judgment was issued. In 1967 Greene contacted Cutler's parents in an attempt to locate him. Greene was informed that Cutler "wouldn't have anything to do with us as long as he had to pay child support." Unbeknownst to Greene, Cutler had moved from Los Angeles to Kern County, and used a post office box as his address in subsequent years.

In December 1967 Greene remarried. In the ensuing years, Greene and her family engaged in several moves that were related to her new spouse's job. In 1979, while the children were still minors, Greene did manage to locate and contact Cutler. Valerie thereafter lived with her father for approximately 10 months, after which she returned to her mother's home.

Once Los Angeles County ceased to pursue collection of the support, Greene did not attempt any further collection efforts until 1996, when she contacted the district attorney's office in Clark County, Nevada, where she was residing, and requested assistance. On October 18, 1996, a statement for registration of foreign support order was filed in Kern County.[1] The amount of child support arrearages was stated to be $54,360.22, as of September 1, 1996. This sum included principal and accrued interest. The Kern County

---

[1]The registration of the judgment was pursuant to the Uniform Reciprocal Enforcement of Support Act at Family Code former section 4863; registration is now pursuant to section 5602 of that code.

District Attorney's Office then sought and obtained an order for an assignment of wages and recorded an abstract of judgment.[2]

On October 30, 1996, Cutler filed a motion to vacate the registration of the foreign support judgment. In the motion Cutler asserted that Greene had "deserted" him and actively concealed their children from him. Thus, pursuant to *In re Marriage of Damico* (1994) 7 Cal.4th 673 [29 Cal.Rptr.2d 787, 872 P.2d 126], Cutler argued Greene was estopped from collecting child support. Cutler also challenged the calculation of the amount of the arrearages.

On November 22, 1996, the district attorney filed a response to the motion challenging the claim of concealment and itemizing the amounts owed. The amounts claimed owing did not include any sums that would have been payable for Valerie during the period she was living with Cutler, even though there had been no modification of the support judgment.

At the initial hearing on the motion held on December 2, 1996, testimony was taken from both sides. During this hearing, Cutler asserted estoppel and laches as defenses. The trial court ordered further briefing.

On May 6, 1997, the trial court issued its tentative decision. The trial court found that the concealment, if any, ended when the children were minors. Therefore, pursuant to *In re Marriage of Comer* (1996) 14 Cal.4th 504 [59 Cal.Rptr.2d 155, 927 P.2d 265], the defenses of concealment and estoppel based upon concealment were unavailable to Cutler. The court found that Cutler had the ability to readily locate his children by contacting Greene's family or their mutual friends, who could have provided him with Greene's address, yet he made no "reasonable diligent efforts" to do so. In addition, the trial court found that although Greene changed jobs and residences several times during the children's minority, she maintained a listed telephone number and submitted changes of address to the United States Postal Service. The trial court also found that despite his knowledge of the support order, Cutler made no effort to support his children "over an extended period of time."

The trial court also noted that Charles and Valerie turned 18 years old on February 15, 1981, and November 13, 1982, respectively. The trial court then stated the issue as "whether [Greene's] enforcement proceedings were brought within the statutory limitations period applicable to the judgment."

---

[2]The judgment in this case was not issued pursuant to Welfare and Institutions Code former section 11350 or Family Code section 17402 and there is no indication in the record that Greene ever received public assistance.

The trial court indicated that if the judgment had not been timely renewed, laches would be a defense. With respect to the laches defense, the trial court set the matter for further hearing and argument. Cutler filed an objection to the tentative decision.

The district attorney filed its brief contending that the entire amount of the support arrearages was not time-barred and was fully collectible until paid in full. Cutler contended that support was owed until the children turned 18 years old; the judgment was required to be renewed after 10 years and was not renewed; failure to renew the judgment barred its enforcement; and even if timely renewed, enforcement was barred by laches.

After further hearing the matter was taken under submission. The trial court issued its ruling and found that Greene had not waived her right to collect support arrearages, and that Cutler could not invoke concealment as a defense.

Cutler requested a statement of decision and one was prepared.

Cutler objected to the proposed statement of decision and each side filed further briefing and argument. On July 27, 1998, the court issued its corrected "Decision, Findings & Statement of Decision." In that decision the trial court reversed its earlier ruling and held that Cutler's support obligation ended when the children reached 18 years of age. The court further found that under Civil Code former sections 4708 and 4383, Greene became barred from collecting support payments for both children in 1991 and 1992 because by that time all past due support payments were more than 10 years overdue. The court therefore found that Greene failed to enforce the judgment within ". . . the then-existing limitations period, and is now barred from collecting support under the judgment." The trial court did not reach the issue of laches because of its sustaining of the statute of limitations defense.

On September 17, 1998, the district attorney filed a timely notice of appeal.

The issue before this court is whether Greene is barred from collecting the child support arrearages.

We conclude the trial court erred when it held that the support judgment was extinguished prior to the enactment of Family Code section 4502, effective January 1, 1994. A history of the relevant statutory authority discloses that although the judgment was dormant, it was not extinguished.

Thus, we conclude that Greene is not barred from enforcing the judgment. We further conclude that lack of diligence, set forth in Family Code section 291, is not a viable defense to enforcement; nor, under the facts of this case, is laches a defense.

## DISCUSSION

### I. *Duty to Support Until Age 21*

 As Greene points out, the trial court's decision includes a fundamental error. The trial court apparently adopted Cutler's position that his obligation to support his children terminated when they attained the age of 18 years. We disagree.

The interlocutory decree issued on June 6, 1966, specified that child support would continue "until the children are of legal age or otherwise emancipated or until further order of the court." The final decree dated May 25, 1967, continued this provision in effect. At the time the interlocutory and final decrees were issued, the legal age of majority was 21 years of age. (Stats. 1973, ch. 278, § 1, p. 674 [former Civ. Code, § 25.1].)

As applied to judgments for child support which were issued prior to 1972, the obligation to make support payments continued until the children were 21 years of age, despite the lowering of the legal age in 1972 to 18 years, unless there was a subsequent order of the court modifying the obligation in a particular case. (*Ganschow v. Ganschow* (1975) 14 Cal.3d 150, 157 [120 Cal.Rptr. 865, 534 P.2d 705].) It is undisputed that no such order was issued in this case. Further, no such order could issue at this date because child support obligations may not be modified retroactively. (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 439 [75 Cal.Rptr.2d 738, 956 P.2d 1191].)

In the instant case, therefore, Cutler was obligated to support his son until February 15, 1984, and his daughter until November 13, 1985, the dates on which they turned 21 years of age, unless they emancipated at an earlier age.[3] Keeping in mind these dates, we now turn to a discussion of the relevant statutes to determine whether there is an extant judgment for Greene to enforce.

---

[3]Appellant correctly points out that the trial court failed to make a finding as to the dates on which Charles and Victoria became emancipated. The trial court's order only states the dates on which they turned 18 years of age, which is not the relevant date for calculating when Cutler's support obligation ended.

## II. *Statutory Authority*

The trial court's conclusion that the support judgment was uncollectable because it was extinguished is not supported by the relevant statutory authority or case law.

### *Law at Time of Entry of Judgment*

At the time the final decree was entered in 1967, the Code of Civil Procedure specified that money judgments may be enforced for a period of 10 years. (Stats. 1955, ch. 754, § 1, p 1248.) With respect to support judgments payable in installments, case law established that the period of enforceability ran as to each installment from the date the installment becomes due. (*Wolfe v. Wolfe* (1947) 30 Cal.2d 1, 4 [180 P.2d 345].) At the time the *Wolfe* decision was issued, Code of Civil Procedure section 681 provided for a five-year period of enforceability. (30 Cal.2d at p. 3.) *Wolfe* held that the "limitation statute has uniformly been deemed not to have run against unpaid installments under a judgment until five years after they have become due." (*Id.* at p. 4.) The Code of Civil Procedure was subsequently amended in 1955 to provide for a 10-year period of enforceability. (Stats. 1955, ch. 754, § 1, p. 1248.) Enforcement of the judgment within the statutory period could be had by way of a writ of execution; no notice, motion, or further court order was required. (*Wolfe v. Wolfe, supra,* 30 Cal.2d at p. 4.)

In addition, former section 685 of the Code of Civil Procedure provided that a judgment could be enforced after the expiration of the statutory period, upon noticed motion setting forth the reason for the delay in enforcement; enforcement after the statutory period was discretionary with the trial court. (Stats. 1955, ch. 754, § 2, p. 1248.) This was true of support judgments as well. (See *Wolfe v. Wolfe, supra,* 30 Cal.2d at pp. 3-4.) It is important to note that *Wolfe* acknowledged the ability to enforce support judgments with prior court approval, outside the statutory period, even though other provisions of the Code of Civil Procedure purported to bar the commencement of action.[4]

Thus, when the support judgment was issued in the instant case, installments were enforceable for a period of 10 years from the date upon which they became due by way of writ of execution. Installments more than 10 years overdue were enforceable at the discretion of the trial court upon noticed motion.

---

[4]The provision of Code of Civil Procedure section 337.5 requiring an action on a judgment or decree of a court of the United States or of any state within the United States to be commenced within 10 years appeared as part of Code of Civil Procedure section 336 at the time the *Wolfe* decision issued. It was placed in Code of Civil Procedure section 337.5 by Statutes 1953, chapter 1153, section 2, page 2653.

*Enforcement of Judgments Law*

In 1982 the Legislature passed the comprehensive Enforcement of Judgments Law. This body of law continued in effect many of the provisions already in the Code of Civil Procedure, modified some provisions, and specifically excluded support judgments from its application. (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 683.110, p. 76.)

Chapter 3 of the Code of Civil Procedure was enacted in 1982 as the Enforcement of Judgments Law. (Stats. 1982, ch. 1364, § 2, p. 5073.) The Enforcement of Judgments Law renumbered and continued in effect the provisions of Code of Civil Procedure former section 681. (Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 683.020, p. 72.) In addition, Code of Civil Procedure section 683.030, codifying the holding of *Wolfe* with respect to money judgments payable in installments, was enacted as part of chapter 3. (Stats. 1982, ch. 1364, § 2, p. 5073.)

Also included in chapter 3 was Code of Civil Procedure section 683.020, which provided that "upon the expiration of 10 years after the date of entry of a money judgment" the judgment "may not be enforced." This was a departure from the prior state of the law, which allowed for discretionary enforcement after the statutory period. However, section 683.030 of the Code of Civil Procedure provided that for money judgments payable in installments, the 10-year period of enforceability runs as to each installment from the date the installment became due.

The Enforcement of Judgments Law also provided a then new procedure for renewal of judgments prior to the expiration of the 10-year period, and provided that the renewed judgment would be enforceable for 10 years from the date of the renewal. (Code Civ. Proc., §§ 683.110, 683.180; Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc., *supra*, foll. § 683.110, p. 76.) Thus, a judgment, or renewed judgment, was enforceable as a matter of right for 10 years; after that period, there was no discretionary enforcement under the Enforcement of Judgments Law.

Code of Civil Procedure section 683.310 was also enacted as part of the Enforcement of Judgments Law in 1982. (Stats. 1982, ch. 1364, § 2, p. 5077.) As originally enacted, that section provided: "This chapter does not apply to judgments made, entered, or enforceable pursuant to the Family Law Act, Part 5 (commencing with Section 4000) of Division 4 of the Civil Code."

The chapter referred to by section 683.310 was chapter 3 of the Code of Civil Procedure. By its very language, section 683.310 exempted any judgments covered by the Family Law Act from the provisions of the Enforcement of Judgments Law. Thus, the absolute bar on enforcement of judgments over 10 years old, unless timely renewed, that was imposed by the Enforcement of Judgments Law as set forth in Code of Civil Procedure section 683.020 was inapplicable to support judgments, and the provisions of the Family Law Act governed such judgments.

*Family Law Act*

At the same time the Legislature enacted the Enforcement of Judgments Law, it added two statutes to the Civil Code, as part of the Family Law Act, which applied to support judgments and methods of enforcing those judgments. The first such statute was Civil Code former section 4383. (Stats. 1982, ch. 497, § 15, p. 2140.) That section provided in part that "a judgment, order, or decree for the payment of child or spousal support may be enforced by a writ of execution without prior court approval for amounts that are not more than 10 years overdue on the date of the application for the writ."

As to amounts more than 10 years overdue, Civil Code former section 4384 was enacted in 1982 and provided: "[t]he lack of diligence for more than 10 years in seeking enforcement of a judgment, order or decree of the court made, entered, or enforceable pursuant to this part that requires the payment of money shall be considered by the court in determining whether to permit enforcement of the judgment, order or decree under Section 4380.[5] In the case of a judgment, order, or decree for the payment of money in installments, the 10-year period runs as to each installment from the date the installment became due."[6] (Stats. 1982, ch. 497, § 16, p. 2140.)

These statutes continued in effect the holding set forth in *Wolfe.* (*Wolfe v. Wolfe, supra,* 30 Cal.2d at pp. 3-4.) A support judgment was enforceable by writ of execution without prior court approval for amounts due within the 10-year statutory period; amounts outside the statutory period required prior court approval and were subject to a lack of diligence defense. (Stats. 1982, ch. 497, §§ 15, 16, p. 2140.)

Thus, as applied to the instant case, the status of the law remained unchanged from the date of issuance of the judgment until January 1, 1987,

---

[5]Civil Code former section 4380 provided that any judgment could be enforced by the court by "execution, attachment, the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary." (Stats. 1970, ch. 311, § 1, p. 706.)

[6]These provisions were made applicable to any judgment for child support regardless of whether the judgment had been entered pursuant to the Family Law Act. (Stats. 1982, ch. 497, § 16.5, p. 2140.)

when Civil Code former section 4384.5 became effective, and provided for renewal of support judgments. (Stats. 1986, ch. 1046, § 1, p. 3670.) Civil Code former section 4384.5 provided in relevant part that: "[a]ny party may renew a judgment for spousal or child support by filing an application for renewal of the judgment in the manner specified in Article 2 (commencing with section 683.110) of Title 9 of Part 2 of the Code of Civil Procedure." A renewed judgment was enforceable by writ of execution without prior court approval; if not renewed, the provisions of former Civil Code section 4384 provided for enforcement of amounts more than 10 years overdue only with prior court approval.

The law further changed effective January 1, 1988, when Civil Code former section 4383 was amended and expanded the time period for enforcement without prior court approval. (Stats. 1987, ch. 960, § 1, p. 3239.) That amendment to Civil Code former section 4383 provided for enforcement of support arrearages by "writ of execution without prior court approval until five years after the child reaches the age of majority and, thereafter, for amounts that are not more than 10 years overdue on the date of the application therefor." (Stats. 1987, ch. 960, § 1, p. 3239.) Civil Code former section 4384 continued to provide that lack of diligence, at the court's discretion, was a defense to enforcement of any amounts outside the statutory or renewal period set forth in former section 4383. (Stats. 1987, ch. 960, § 2, p. 3240.)

Therefore, pursuant to Civil Code former section 4383, as effective January 1, 1988, Greene would have been able to enforce the support judgment by writ of execution for five years after the child reached the age of majority. Charles reached the age of majority on February 15, 1984, Valerie on November 13, 1985. (*Ganschow v. Ganschow, supra,* 14 Cal.3d at p. 157.) Therefore, as of 1988, Greene was entitled to enforce the support judgment without prior court approval as to all arrearages due for Charles until February 15, 1989, and for all arrearages due for Valerie until November 13, 1990. After the expiration of the five-year period after attainment of the age of majority, Greene was entitled to enforce the judgment without prior court approval only as to those amounts which became due within 10 years; amounts due more than 10 years prior were enforceable with prior court approval.

*Subsequent Statutory Amendments*

In 1991 Code of Civil Procedure section 683.130 was amended to provide in part that notwithstanding any other provision of law, if not previously renewed, a support judgment could be renewed at any time as to all past due

amounts until the child attained the age of 23 years. (Stats. 1992, ch. 718, § 4, p. 3320.)

In 1992 the Civil Code provision permitting support judgments to be renewed was repealed and the following language was adopted as Civil Code former section 4384.5: "Notwithstanding any other provision of law, a judgment for child or spousal support, including a judgment for reimbursement or other arrearages, is exempt from any requirement that judgments be renewed. A judgment for child or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." (Stats. 1992, ch. 718, §§ 2, 3, pp. 3319-3320.)

Effective October 6, 1993, Code of Civil Procedure section 683.130 was amended to add subdivision (c)(1) to that code section, which subdivision contains essentially the same language as contained in the 1992 amendment to Civil Code former section 4384.5.

In 1993 the Legislature repealed the Family Law Act and reenacted many of its provisions in the Family Code. Family Code section 4502 currently provides: "Notwithstanding any other provision of law, a judgment for child, family, or spousal support, including a judgment for reimbursement or other arrearages is exempt from any requirement that judgments be renewed. A judgment for child, family, or spousal support, including all lawful interest and penalties computed thereon, is enforceable until paid in full." Family Code section 4502 was enacted in 1993, and became effective as of January 1, 1994. (Stats. 1993, ch. 219, § 143, p. 1650.)

III. *Analysis*

In this appeal, Cutler argues that at the time Family Code section 4502 became effective, Greene was barred from collecting support arrearages without prior court approval. He contends that the support judgment was therefore time-barred as of the effective date of the statute and time-barred support obligations are not revived by Family Code section 4502. Cutler also contends that applying Family Code section 4502 in the instant case would deprive him of a substantive right by eliminating a defense, lack of diligence, to which he was previously entitled.

We agree with Cutler that time-barred judgments are not revived by Family Code section 4502. However, a judgment that requires prior court approval for enforcement is not time-barred; therefore, Family Code section 4502 applies. Further, the elimination of lack of diligence as a defense to the enforcement of a support judgment does not deprive Cutler of a substantive right.

*Extant Judgment*

As this court held in *In re Marriage of Sweeney* (1999) 76 Cal.App.4th 343 [90 Cal.Rptr.2d 298] (*Sweeney*), Family Code section 4502 applies to all judgments which were extant on the January 1, 1994, effective date of the enactment of that statute. (*Sweeney, supra*, 76 Cal.App.4th at p. 347.) Family Code section 4502, however, merely continued in effect the provisions of Civil Code former section 4384.5 (part of the former Family Law Act), effective January 1, 1993, which also provided that support judgments were enforceable until paid in full. (*Trend v. Bell* (1997) 57 Cal.App.4th 1092, 1097-1098 [68 Cal.Rptr.2d 54].)

Although the support judgment was issued in 1966, and never renewed, it was still extant at the time Family Code section 4502 became effective and at the time Greene sought to enforce the support judgment. The detailed history of the relevant statutes, *ante*, reflects that while the support judgment could not be enforced without a prior court order as of the effective date of Civil Code former section 4384.5, it was still enforceable, albeit, at the discretion of the court.

We noted in *Sweeney* that the 1963 support judgment in that case had become dormant, not extinguished, 10 years after its entry. The appellant in *Sweeney* then filed a motion in 1979 seeking court approval to enforce the dormant judgment; the motion was denied. No appeal was taken from that order and the order became final many years before the enlargement of the applicable time period for enforcement as a matter of right. We held that after the 1979 order became final, the claim for support arrearages was barred by res judicata. (*Sweeney, supra*, 76 Cal.App.4th at pp. 347-348.)

Unlike *Sweeney*, there is no earlier court order in the instant case which would invoke the principles of res judicata and thus bar enforcement of the support judgment against Cutler. Greene's 1966 support judgment was dormant, but extant, at the time Civil Code former section 4384.5 provided that support judgments were enforceable until paid in full. As such, the provisions of Civil Code former section 4384.5, now Family Code section 4502, apply and the support judgment is fully enforceable until paid in full. (*Sweeney, supra*, 76 Cal.App.4th at p. 347.) Pursuant to Family Code section 4503, Greene may maintain an action to recover the arrearages at any time within the time period for enforcement of the judgment. Thus, an action can be maintained at any time until the support judgment is paid in full.

In this respect, our holding is consistent with the decision of *In re Marriage of Garcia* (1998) 67 Cal.App.4th 693 [79 Cal.Rptr.2d 242] (*Garcia*). In *Garcia*, the wife sought in 1997 to enforce a 1966 child support

judgment, where no payments had been received since 1972. There had been no modifications or renewals of the support order. (*Garcia, supra,* 67 Cal.App.4th at pp. 696-697.) The appellate court in *Garcia* analyzed the statutes that had been in effect and concluded, properly we believe, that prior to 1993, enforcement of a support judgment for amounts not more than 10 years overdue could be had without prior court approval. As to amounts more than 10 years overdue, it was within the trial court's discretion whether to allow enforcement pre-1993. (*Id.* at pp. 697-698.) *Garcia* concluded that pre-1993 law did not establish a "statute of limitation" beyond which a support judgment was no longer enforceable; the prior statutory scheme merely provided for a difference in methods of enforcement. (*Garcia, supra,* 67 Cal.App.4th at pp. 699-700, see also, *In re Marriage of Wight* (1989) 215 Cal.App.3d 1590 [264 Cal.Rptr. 508] (*Wight*).)

To the extent that *Puig v. Ryberg* (1991) 230 Cal.App.3d 141 [283 Cal.Rptr. 604] and *In re Marriage of Ryan* (1994) 22 Cal.App.4th 841 [27 Cal.Rptr.2d 580] are interpreted as holding that a child support judgment is extinguished if not enforced within the statutory period, we disagree with their holdings, as did the appellate court in *Garcia.* (*Garcia, supra,* 67 Cal.App.4th at p. 700.) The appellate court in *Puig,* although it relied upon *Wight,* did not distinguish between enforcement as a matter of right and discretionary enforcement of the support judgment. (*Puig v. Ryberg, supra,* 230 Cal.App.3d at p. 145; see *Garcia, supra,* 67 Cal.App.4th at p. 700.) The appellate court in *Ryan,* after specifically noting that provisions of the former Family Law Act provided for enforcement by writ of execution within the statutory time frame and, thereafter, at the discretion of the trial court, merely referred to the judgment as fully enforceable as to amounts within the statutory time frame. (*In re Marriage of Ryan, supra,* 22 Cal.App.4th at p. 850.) In our opinion, noting that the judgment was fully enforceable as to amounts within the statutory time frame can be viewed as consistent with the judgment being enforceable as a matter of right during the statutory period and, thereafter, only at the discretion of the trial court.

Thus, regardless of the provisions of Code of Civil Procedure section 337.5, support judgments have remained extant and enforceable after the applicable time periods set forth in the statutes for enforcement as a matter of right. Pre-1993 methods of enforcement differed depending upon when the arrearages accrued; after January 1, 1993, all arrearages became fully enforceable as a matter of right, regardless of when accrued. No statute extinguished the judgment if it was not enforced in the statutory time period. We conclude, therefore, that the support judgment in the instant case is extant and Greene is not barred from enforcing that judgment pursuant to Family Code section 4502. (*Sweeney, supra,* 76 Cal.App.4th at p. 347.)

*Lack of Diligence*

Having concluded that the support judgment is extant and Family Code section 4502 applies, we now address Cutler's argument that applying that code section would deprive him of a substantive right, namely the lack of diligence defense.

■ Cutler's argument on this point assumes correctly that Family Code section 4502 overrides the provisions of Family Code section 291. Family Code section 4502 states that a judgment for child support is fully enforceable until paid in full *notwithstanding any other provision of law.* Family Code section 4502 was enacted by the Legislature in 1993, and became effective in 1994. (Stats. 1993, ch. 219, § 143, p. 1650.) The phrase "[n]otwithstanding any other provision of law" is a very comprehensive phrase. This phrase signals a broad application overriding all other code sections unless it is specifically modified by use of a term applying it only to a particular code section or phrase. (*People v. Tillman* (1999) 73 Cal.App.4th 771 [86 Cal.Rptr.2d 715].) There is nothing in the phrasing of Family Code section 4502 that would limit its broad language.

Section 291 of the Family Code was enacted a year earlier, in 1992, and became effective in 1993. (Stats. 1992, ch. 162, § 10, pp. 464, 474.) It is section 291 of the Family Code which permits a court to consider a lack of diligence in determining whether to permit enforcement of support orders. In construing a statute, we presume the Legislature has knowledge of all prior laws and enacts and amends statutes in light of those laws. (See, e.g., *People v. Pieters* (1991) 52 Cal.3d 894, 907 [276 Cal.Rptr. 918, 802 P.2d 420]; *Estate of McGill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) Further, in interpreting a statute, "effect must be given to every word or phrase so that no part is useless or devoid of meaning." (*Wight, supra,* 215 Cal.App.3d at p. 1595.) Finally, where statutory language is clear, there is no need to resort to any other indicia of intent. (*In·re Marriage of Robinson* (1998) 65 Cal.App.4th 93, 96 [76 Cal.Rptr.2d 134].)

As a later enacted statute which includes the comprehensive phrase "notwithstanding any other provision of law," Family Code section 4502 prevails over section 291. The language of Family Code section 4502 is clear and unambiguous; to interpret the statute in any other manner would render the phrase "notwithstanding any other provision of law" mere surplusage.

■ As for Cutler's argument that it is "unfair" to apply current statutes in the instant case and that doing so deprives Cutler of a vested right, we disagree.

Preliminarily, we note that in a civil matter, any limitation on enforcement is purely procedural; it does not involve a substantive right. (*Liebig v. Superior Court* (1989) 209 Cal.App.3d 828, 832 [257 Cal.Rptr. 574].) Further, even if Cutler had some inchoate vested right to assert lack of diligence as a defense, vested rights are not immune from change when important state interests are at stake. (*Id.* at p. 834.)

There is nothing unfair about requiring a parent to fulfill his moral and legal responsibilities. We first note that Cutler was fully aware of the child support judgment and his legal obligation to support his children. His contention that he failed to make payments because the children were concealed from him is meritless. First, because the trial court found that there was no concealment and that Cutler failed to make reasonable, diligent efforts to locate his children, despite having readily available to him information regarding their whereabouts; and he failed to commence payments even after reuniting with his children while they were teenagers. Second, by reason of having fathered two children, Cutler knew or should have known that someone or some entity was supporting his children and that a claim for recoupment could be made. (*In re Marriage of Comer, supra,* 14 Cal.4th at p. 526.) Finally, a noncustodial parent may tender support payments to the district attorney in the county that rendered the support order, or may place those payments in a trust account for the children, if unable to locate the custodial parent and children. (*Id.* at pp. 526-527.) Cutler also had the option of seeking a modification of the support judgment. Cutler made no attempts to avail himself of any of these alternatives. It is apparent from the record that he made no attempt whatsoever to fulfill his moral and legal responsibilities.

Cutler's claim of unfairness amounts to nothing more than a request that he be rewarded for having successfully avoided his parental responsibilities and legal obligations in the past; this we decline to do.

Turning to the assertion of deprivation of a vested right, there is no deprivation of a substantive right. A statute making procedural changes in the method of enforcing a judgment is purely remedial to an existing status, and such statutes, unless they provide to the contrary, have historically been held to apply to pending or existing matters. (*Wight, supra,* 215 Cal.App.3d at p. 1594, fn. 4, citing *Angeli v. Lischetti* (1962) 58 Cal.2d 474, 478 [24 Cal.Rptr. 845, 374 P.2d 813].) Further, civil statutes of limitations are designed to " ' "promote justice by preventing surprises." ' " (*Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 488 [59 Cal.Rptr.2d 20, 926 P.2d 1114].) Cutler can hardly claim to be surprised that there exists an outstanding judgment for child support; he was fully aware of the support

order, his obligations thereunder, and his failure to fulfill those obligations. Greene in no way seeks to alter those support obligations, merely to enforce the long-standing obligation.

Changes in the law enlarging the time frame in which a child support order could be enforced as a matter of right, thus removing lack of diligence as a possible defense, have historically been applied in all instances where enforcement is sought after the statute has been enlarged. (*In re Marriage of Ryan, supra,* 22 Cal.App.4th at p. 850; *Puig v. Ryberg, supra,* 230 Cal.App.3d at pp. 145-146; *Wight, supra,* 215 Cal.App.3d at p. 1595.) Thus, with respect to an enlargement of the time frame for enforcement as a matter of right with respect to extant child support judgments, the statute in effect at the time enforcement is sought is the statute that is to be applied.[7] This same principle has been applied in family law cases addressing issues other than support. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371] [addressing property division and nature of property as community or separate].) At least one treatise also questions the present availability of lack of diligence as a defense to child support judgments after the statute has been amended. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶¶ 6:95, pp. 6-35 to 6-36 (rev. # 1, 1998), & 6:739, p. 6-281.)

Further, the custodial parent's interest in arrearages owed under a support judgment is not just statutory; the judgment is a vested property right protected by the California Constitution. (*In re Marriage of Comer, supra,* 14 Cal.4th at p. 541.) What Cutler asks this court to do, in effect, is reduce Greene's property rights, even though the clear legislative intent as evidenced by Family Code section 4502, is that such rights remain fully intact until completely satisfied. A judicial reduction of arrearages, which is statutorily unauthorized, raises due process concerns. (See *In re Marriage of Comer, supra,* 14 Cal.4th at p. 541.)

In *In re Marriage of Plescia* (1997) 59 Cal.App.4th 252 [69 Cal.Rptr.2d 120], the appellate court noted that in amending the relevant statutes to make support obligations enforceable until paid in full, "[t]he Legislature seemed to be saying that lack of diligence in seeking enforcement of a judgment for spousal support would no longer be looked at." (*Id.* at p. 261.) Since the relevant statutes apply to both child and spousal support, we see no reason

---

[7]The one exception has been the *Garcia* case, and in this aspect of that appellate opinion we disagree. (*Garcia, supra,* 67 Cal.App.4th at pp. 698-699.) The cases relied on by *Garcia* to reach this conclusion did not address family law matters, and the conclusion reached by the *Garcia* court on this point is, in our view, contrary to the body of case law interpreting the statutes that enlarged the time frame for enforcement of support judgments as a matter of right.

why the *Plescia* court's conclusion that Family Code section 291 is no longer a viable defense to enforcement of spousal support judgments should not apply equally to child support judgments. (*In re Marriage of Plescia, supra,* 59 Cal.App.4th at pp. 261-262.)

We therefore hold that lack of diligence, as set forth in Family Code section 291, is not a defense to enforcement of a judgment for child support pursuant to Family Code section 4502.

### Laches

Although Cutler has not raised the issue of laches on appeal, he did in the trial court. The trial court declined to rule on whether laches was available as a defense because it found enforcement to be barred on other grounds. Because we reverse the trial court's determination that enforcement of the judgment is barred by the statute of limitations, for the benefit of the trial court we will briefly address the availability of laches as a defense and conclude that it, too, is not a viable defense to the enforcement of this child support judgment.

As the appellate court in *Plescia* noted, lack of diligence and laches are not the same. Laches requires both undue delay and undue prejudice to the party raising the defense. (*In re Marriage of Plescia, supra,* 59 Cal.App.4th at p. 262.) Although *Plescia* addressed the availability of laches as a defense to enforcement of a spousal support judgment, Division Two of the Second Appellate District recently held that laches was a potential defense to payment of a child support judgment. (*In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353, 1363 [93 Cal.Rptr.2d 653].)

We need not, and do not, decide whether the defense of laches is available in general as a defense to payment of a child support judgment, because under the facts of the instant case, laches is not available to Cutler as a defense.[8] In the pleadings and testimony before the trial court, Cutler asserted only that there had been a substantial delay; no attempt was made to establish prejudice, let alone undue prejudice, from any delay. (See *In re Marriage of Plescia, supra,* 59 Cal.App.4th at p. 262.)

Laches is an equitable remedy, and as a general rule, a party seeking equitable relief must come into court with clean hands. (*In re Marriage of*

---

[8] In its May 6, 1997, ruling the trial court scheduled a further hearing for May 23, 1997, on the issue of laches and whether the judgment was time-barred. That hearing was continued at Cutler's request to June 23, 1997, and briefing on the issues was ordered to be filed by June 16, 1997. On June 23, 1997, the trial court continued the matter to July 15, 1997, and ordered Greene to appear in person at that hearing because Cutler wanted to call her as a witness. At the July 15, 1997, hearing, both Greene and Cutler testified.

*Fogarty & Rasbeary, supra,* 78 Cal.App.4th at p. 1366.) Cutler's hands are unclean. The record shows that Cutler failed to remain in contact with his children, visiting them only three or four times after he and Greene separated. Although Cutler attempted to claim that he was unable to locate Greene and the children, and thus unable to pay his child support, we note that Greene had to seek assistance from the Los Angeles District Attorney's Office not long after the judgment was issued in 1966. The district attorney was able to collect the equivalent of two months' worth of child support before it, too, was unable to locate Cutler. The record reflects that Cutler had ceased making payments under the child support judgment at least one year before Greene remarried and moved. The record also reflects that the Los Angeles District Attorney's Office, after attempting for five years to locate Cutler and pursue the matter, was still in contact with Greene and able to notify her it was closing its file. Cutler also failed to make any attempt to comply with the judgment after Greene was successful in reestablishing contact between Cutler and the children while the children were minors. It is abundantly apparent, from the record in this case, that Cutler cannot avail himself of a laches defense. (*Ibid.*)

For Cutler, the only defense to enforcement of the child support judgment is payment in full.

## DISPOSITION

The judgment is reversed and remanded to the superior court for further proceedings pursuant to Family Code sections 5602 and 5603, including reinstatement of the registration of the support judgment as of September 18, 1996. Costs on appeal awarded to appellant.

Dibiaso, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied April 17, 2000, and on April 14, 2000, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 21, 2000. Mosk, J., was of the opinion that the petition should be granted.