[Civ. No. 18432. First Dist., Div. One. Oct. 22, 1959.]

HOPE GRAHAM, Appellant, v. CHARLES H. GRAHAM, Respondent.

Joseph T. Curley and Marvin C. Hix for Appellant.

J. J. Doyle for Respondent.

WAGLER, J. pro tem.*—On May 12, 1947, plaintiff-appellant obtained a final decree of divorce from defendant. By said decree defendant was directed to pay plaintiff $50 per month alimony and $80 per month for the support of two minor children.

On April 2, 1958, defendant instituted "show cause" proceedings seeking to modify said decree by reducing his payments to $50 per month "as and for alimony, maintenance and support of plaintiff and one" child. The order to show

---

*Assigned by Chairman of Judicial Council.

cause was heard on April 11, 1958, on the affidavit of defendant, the counteraffidavit of plaintiff, and the oral testimony of both parties.

On April 14, 1958, the court signed and filed an order reading (so far as relevant) as follows: "IT IS FURTHER ORDERED that defendant's order to show cause for modification of The Final Judgment of Divorce be and the same is hereby approved to provide that from this date forward defendant pay to plaintiff as and for the maintenance and support of Edward John Graham the amount of Fifteen ($15.00) Dollars per week." (The order is silent on the question of alimony.) From this order plaintiff has appealed upon a settled statement which purports to contain all of the oral testimony as well as the affidavits of the parties.

At the opening of the hearing appellant objected to the entertainment of defendant's request for modification on the ground that defendant had never fully complied with the original support order, that he was therefore in contempt and not entitled to be heard. In his affidavit defendant had alleged that after the entry of the final decree, he and plaintiff "entered into an oral agreement that plaintiff was to be paid and receive from defendant the amount of twenty-five ($25.00) Dollars per week as and for alimony, maintenance and support of plaintiff and the issue of this marriage. That from the date of said judgment and oral agreement (meaning about the 14th day of May, 1947) to the date of this affidavit defendant has conformed to said agreement and has regularly paid said sums to plaintiff for said purposes."

In her counteraffidavit plaintiff denied the making of the aforementioned oral agreement, admitted the regular payment of $25 per week by defendant which "was wholly insufficient to support affiant and said two minor children," and alleged that "defendant [was] in arrears in the sum of $2900.00 on alimony and support payments."

In the order of modification the trial court recited "[t]hat defendant [was] not in any arrearages to plaintiff under the provisions of the . . . decree . . . duly made and recorded herein." Appellant attacks this finding on two grounds: (1) that it is not supported by the evidence, and (2) that as a matter of law the support order could not be modified by an oral agreement.

While it is true, as stated above, that plaintiff in the affidavit denied that any agreement had been made between

herself and the defendant and while she made similar statements at the hearing, the rule is well settled that " 'An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. ■ In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review.' " (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 507, 508 [289 P.2d 476, 47 A.L.R.2d 1349].)

■ As an appellate court our power therefore "begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trial court]." (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] ; *Estate of Teel,* 25 Cal.2d 520 [154 P.2d 384] ; *Millard* v. *Millard,* 102 Cal. App.2d 249 [227 P.2d 477].)

■ At the hearing defendant testified as follows: "Before I was married the second time, I went up there, we had an agreement, because I couldn't pay on the $130 a month and I told her we'd come to an agreement and I'd pay her $25 a month [sic—week]." He further testified "Well, I just told her at that time I just couldn't pay $130 a month, so we talked it over and I said, 'I'll pay you $25 a week,' and that is the agreement I came to and I have been paying it ever since." It is true, as argued by appellant, that defendant did not testify that plaintiff agreed to accept $25 a week in full payment of the court order of $130 per month, however, the inference that plaintiff did agree to waive the excess may be drawn from this testimony. This inference is strengthened by the undisputed fact that for almost 11 years defendant paid plaintiff the sum of $25 per week, neither more nor less, and by the further fact that during all of said time plaintiff took no legal steps whatsoever to enforce compliance with the court order. Under the well settled rules of judicial review above mentioned we cannot say that the finding in question is not adequately supported by the record.

■ Appellant next contends that an order for support cannot as a matter of law be modified by an executed oral agreement or as to past due installments. In support of this contention appellant cites a number of cases all of which involve attempts to collaterally attack a former judgment by parol evidence. They are therefore distinguishable on the facts. Appellant also cites 49 Corpus Juris Secundum 476, where it is said ''The judgment of a court cannot be changed or modified by the agreement of parties or the testimony of witnesses.'' The text footnotes this statement with the case of *People* v. *Traeger,* 339 Ill. 356 [171 N.E. 548], a proceeding on habeas corpus. In *Traeger* the court said: ''The parties cannot stipulate as to the meaning or effect of the judgment of a court. The issue in a habeas corpus case is made by the return and the denial of any material fact set forth in the return which may be made and the allegation of any other fact which may be material in the case, which must be under oath. We will not consider a stipulation of parties that the decision of the case was rendered upon a point not within the issue made by the pleadings. The judgment of a court appears from its record, and cannot be shown, changed, or modified by the agreement of parties or the testimony of witnesses.'' Although the quotation from Corpus Juris Secundum might be interpreted broadly enough to cover the factual situation in the instant case we do not believe that such breadth was intended by the text or by the Illinois court.

■ Assuming, for the sake of argument only, that both of appellant's contentions are correct, nevertheless, we believe that she has misconstrued the finding of the trial court and that the point therefore is unimportant. The finding in question was based not upon the proposition, as appellant contends, that the *court order* was modified by the oral agreement, but rather, as respondent contends, that it was based upon the implied finding that appellant had waived all sums in excess of $25 per week.

Although no case has been found expressly holding that one may waive the benefit of an award for alimony and support, the law is well settled that one may waive any civil right (25 Cal.Jur. 929; *Estate of Shapiro,* 79 Cal.App.2d 731, 733 [181 P.2d 117]), and that '' [a]ny one may waive the advantage of a law intended solely for his benefit.'' (Civ. Code, § 3513.) A wife may waive her right to alimony pendente lite (*Patton* v. *Patton,* 32 Cal.2d 520 [196 P.2d

909]), and her right to avoid a transfer of community real property executed solely by her husband. (*Rice* v. *McCarthy*, 73 Cal.App. 655 [239 P. 56].) There appears to be no valid reason why a woman cannot also waive her right to a portion of the alimony and support provided for by a decree of divorce so as to relieve her former husband of a charge of contempt based upon a wilful disobedience of said order. The mandate is clear that a court may not modify an award as to accrued installments (Civ. Code, § 139), but that is not the situation here. And the question here is not whether the parties themselves modified the *court order* but rather whether or not a *waiver* was effected by an agreement between plaintiff and defendant.

 " 'Waiver' has been repeatedly defined as 'the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances indicating an intent to waive.' " (*Panno* v. *Russo*, 82 Cal.App.2d 408, 412 [186 P.2d 452].) Although here the evidence of a waiver by express agreement certainly is equivocal, yet when the testimony is considered in connection with the conduct of plaintiff in failing to take any steps to enforce payment in accordance with terms of the decree for over 10 years, we cannot say as a matter of law that the conclusion drawn by the trial court was not justified. We therefore hold that the finding that defendant was not in arrears and therefore not in contempt and entitled to be heard finds adequate support both in the facts and in the law.

 In her reply brief appellant asserts that the issue of waiver was not properly raised by the pleadings and cannot therefore be considered for the first time on appeal. Appellant is in error. As we have already pointed out—as an excuse for not fully complying with the existing order—defendant alleged that the parties had entered into an agreement whereby he was to pay only $25 per week, and that such agreement has been carried out for almost 11 years. Thus the issue was not only raised (*Goorberg* v. *Western Assurance Co.*, 150 Cal. 510 [89 P. 130, 119 Am.St.Rep. 246, 11 Ann.Cas. 801, 10 L.R.A. N.S. 876]), but the record also shows that fully one-half of the oral testimony at the hearing was addressed to this very point.

Finally, plaintiff contends that the trial court so unreasonably restricted her cross-examination of the defendant that

she was deprived of a fair hearing and a miscarriage of justice has been the result. This contention warrants the serious consideration of this court. (See 5 Wigmore on Evidence (3d ed. 1940), § 1368, p. 33.)

An analysis of the respective affidavits discloses that certain relevant changes in the circumstances of the parties subsequent to the entry of the final decree are undisputed: (1) the elder child has been in the United States Navy since January 31, 1958, (2) shortly after the final decree the defendant remarried, (3) plaintiff obtained employment in 1949 and has since been continuously employed. Certain other facts, though not mentioned in either affidavit would appear to be common knowledge: (1) the cost of living has increased greatly since 1947, (2) the cost of feeding, clothing, and educating a 15-year-old is much greater than that of maintaining a 3-year-old child.

The affidavits, however, left the following relevant matters in issue: (1) the alleged waiver agreement, (2) the amount of support required by plaintiff and the minor child, and (3) the income and needs of the respective parties. The record indicates that the entire hearing including the statements of counsel consumed perhaps not over 10 minutes. Of this time at least one-half was devoted to testimony and argument regarding the alleged waiver agreement. The balance of the hearing is set forth in the footnote.*

---

*"Mr. Hix: Q. Your rent is going to be raised, isn't it?

"The Plaintiff: Yes, and may I say this: He told me he wouldn't move out because his mother-in-law was ill and they were expecting them to pass away and they would get their property, and that's exactly what he told me, so help me God.

"The Defendant: O my God.

"Mr. Doyle: Never mind, Mr. Graham.

"The Plaintiff: He kept promising and promising.

"The Court: All right. Well, and I am talking to the husband, the father now, when there isn't enough money to go around I follow a schedule of approximately what the City and County pays to foster homes for children, on the theory that that is about what it costs, and It's $67.50 for a 15-year-old child, so I will make the order $15. a week. Do you get paid on a weekly basis?

"The defendant: That's right.

"The Court: All right, $15 a week.

"Mr. Hix: What about alimony? That's still in there.

"The Court: Well, it doesn't seem probable to me there was not an agreement of some kind.

"Mr. Doyle: All right, Mr. Graham, you can step down.

"The Court: And with this type of income, Counsel, you'd never get it anyway, you would never get the arrearages.

"Mr. Hix: I think you completely overlook the fact he doesn't have

We are not unmindful of the volume of litigation of the type here involved and of the necessity of expediting such hearings. However, we believe that plaintiff should have been permitted to cross-examine the defendant regarding the requirements of himself and of his wife. Likewise her counsel should have been given the opportunity to present testimony regarding her own income and needs. These matters were clearly in issue and in view of the court's statement that "[t]hese people haven't got enough money, either of them, to pay the kind of payments you are asking for" (see fn. p. 685), the court's rulings must be held to constitute prejudicial error if the order in question is to be interpreted as terminating the existing order for alimony.

There can be no question but that a trial court has such power. The rule is stated in 16 California Jurisprudence 2d 509, section 216, as follows: "The power granted to modify also includes the right, in a proper case, to terminate finally the obligation to pay alimony. Where the order indicates an intention that the termination of alimony shall be final and not subject to modification, the obligation to pay alimony may not thereafter be reinstated."

Here, however, there is nothing in the order showing an intention on the part of the trial court to either modify or terminate the alimony award. As we pointed out at the outset, the order appealed from is silent on the question of alimony.

" ' [T]he same rules of interpretation apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing. . . .' " (*Verdier* v. *Verdier*, 121 Cal.App.2d 190, 193 [263 P.2d 57]; *Ex parte Ambrose*, 72 Cal. 398 [14 P. 33].) If a court order or judgment admits of two constructions, that one will be adopted which is consistent with the judgment required by the facts and the law of the case. (*Burnett* v. *Whitesides*, 15 Cal. 35; *Watson* v. *Lawson*, 166 Cal. 235 [135 P. 961].) In con-

---

to support his wife, his wife has an income of $300 a month, and he sets out medical expenses of $45. 'I haven't finished examining him, I would like to continue further examination on this matter. The Union pays his medical expenses; he doesn't have to pay any medical expenses.

"'The Court: Well, you heard me say the reason I picked the figure I did. *These people haven't got enough money, either one of them, to pay the kind of payments you are asking for.* The order will stand.

"Mr. Hix: How about attorney fees?

"The Court: $50.

"The Plaintiff: How about alimony?

"The Court: I will make a finding of no arrearages. All right, that is all.

struing a court order or judgment, resort may be had to the pleadings and findings. (*Bailey* v. *Superior Court,* 142 Cal. App.2d 47 [297 P.2d 795].) For the purposes of the order in question the pleadings consist of the order to show cause and the affidavits. It is significant that the order to show cause (which no doubt was prepared by defendant's counsel) requested that the final decree of divorce be modified to provide for and allow defendant to pay the amount of $50 per month "as and for *alimony,* maintenance and support of *plaintiff* and one of the issue of the parties hereto." (Emphasis added.) Thus it is clear that defendant did not request that all alimony be cut off and under such circumstances we hold that it is not reasonable to assume that the court intended to grant to defendant more relief than he was requesting. If so, the court could have and should have clearly so stated in the order.

Furthermore, assuming for the sake of argument that the order is subject to the dual construction contended for by the respective parties, the contention of the defendant would necessarily have to be rejected because a termination of the order for alimony is not supported by the facts. (See *Burnett* v. *Whitesides, supra,* 15 Cal. 35.) The record shows that defendant's net salary was $89.12 per week (approximately $400 per month), and that of his present wife was about $250 per month. Their only expenses shown by the record were $130 per month board and room for both parties and $45 per month medical care. Although defendant did testify that he was to go on a four-day-week, there is nothing in the record to indicate how this would affect his income. The record is entirely silent as to appellant's income, but in the absence of an opportunity to present this evidence we cannot draw unfavorable inferences against her in order to support the termination of her alimony.

When the record before us is considered as a whole, we are firmly of the opinion that the finding by the trial court that the defendant was "not in any arrearages to plaintiff" is not to be construed as an implied finding that plaintiff permanently waived any right to alimony or child support, but only as an implied finding of a waiver of sums in excess of $25 per week accruing prior to the effective date of the new order, to wit: April 14, 1958. We are of the further opinion that the order appealed from is to be construed as modifying only the order for child support and as leaving intact the existing

order for $50 per month alimony. That this was the intention of the trial court is corroborated by the restrictions placed upon the cross-examination devoted to the alimony issue.

Since plaintiff is entitled to receive, under the order appealed from, more than she was actually accepting without complaint prior thereto, we must necessarily hold that any error in restricting her examination of the defendant has not resulted in a miscarriage of justice, and under section 4½ of article VI of the Constitution the order should be affirmed.

The order is affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 16, 1959.