[No. A087332. First Dist., Div. Four. May 18, 2000.]

In re the Marriage of CHRIS C. and GREG A. HAMER.
CHRIS C. HAMER, Appellant, v.
GREG A. HAMER, Respondent.

**COUNSEL**

Stokes, Steeves, Rowe & Hammer and John R. Stokes III for Appellant.

Greg A. Hamer, in pro. per., for Respondent.

**OPINION**

**SEPULVEDA, J.**—Chris C. Hamer timely appeals from an order quashing a wage assignment that she obtained in April 1998 against her former husband, respondent Greg A. Hamer, to compel payment of certain child and spousal support arrearages for the period November 1993 through May 1997.[1] The trial court found that, by her conduct, Chris waived any right to collect the unpaid support, which was computed under the terms of the final judgment entered on November 12, 1993, in the dissolution action.

We conclude that the trial court's order quashing the wage assignment is contrary to case law and statutes governing the enforcement of support orders, and that it is not supported by substantial evidence. Nor can the portions of the order relating to collection of child support be sustained, as Greg urges, as an exercise of the trial court's inherent power to craft an "equitable" remedy. Thus, the trial court's order will be reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Chris filed a petition for dissolution in Ventura County Superior Court on December 4, 1992. An order for temporary child and spousal support was made on December 23, 1992, and, pursuant to stipulation, Chris was permitted to move to Humboldt County with the parties' three children. A further stipulated order regarding custody, as well as child and spousal support, was made at a settlement conference on April 21, 1993 (the April 1993 support orders). Under the terms of the April 1993 support orders, Greg was required to pay $1,860 per month in child support and $140 per month in spousal support. A separate order regarding the property settlement was entered the same day. Both of the April 21, 1993 orders were handwritten. A stipulated judgment was subsequently circulated for signature by the attorneys and parties. The stipulated judgment provided for child and spousal support in the same amounts set forth in the April 1993 support orders, and also included the parties' agreements with respect to property, custody, and visitation.

---

[1]For convenience, we will refer to the parties by their first names. Obviously, no disrespect is intended by our use of this shorthand device.

On August 2, 1993, while the stipulated judgment was being circulated for signature, Greg—acting without counsel, although he still had an attorney of record—filed a motion in Ventura County Superior Court, seeking modification of the December 1992 custody order and the April 1993 support orders. Greg asked for child support to be set "Per schedule," and that the April 1993 spousal support order be terminated. In a declaration filed on September 27, 1993, in response to the modification motion, Chris stated: "I do consent to a modification of support, commencing November 1, 1993, based upon the income of both parties at that time."

Greg's modification motion was heard in chambers on October 19, 1993, with Chris's attorney present. Chris testified that she did not attend the hearing because she was "an emotional wreck," overwhelmed with work and the children. An order on Greg's modification motion was filed October 21, 1993 (the October 1993 order). The October 1993 order reduced child support to $1,666 per month, suspended spousal support (with a reservation of jurisdiction), and modified the custody and visitation orders. In the October 1993 order, Greg's visitation was conditioned on his compliance with his son's psychological counseling requirements, as well as Greg's attendance at a parenting class. Chris testified that she received the October 1993 order in the mail but did not read it. She was assured by her attorney that she should not worry about it and that he would handle the matter.

Greg admits he signed the stipulated judgment sometime between September 16 and 22, 1993. Chris did not sign the stipulated judgment until October 21, 1993.[2] At the time, she was in Eureka. The stipulated judgment was signed by the trial court judge on November 5, 1993, and filed in Ventura County Superior Court on November 12, 1993 (the November 1993 judgment). Notice of entry of the November 1993 judgment was served on Greg's counsel on November 12, 1993. Greg admits he received a copy of the notice of entry of judgment from his attorney shortly thereafter.

Greg never made child or spousal support payments in the amounts specified in the November 1993 judgment. When he paid support, it was in the amounts stated in the October 1993 order, less offsets he elected to take. In January 1994, Chris obtained a wage assignment to enforce the support orders contained in the judgment, but never collected any money pursuant thereto.[3]

In February 1994, by stipulation of the parties, venue for further family law proceedings was changed to Humboldt County. As far as this record

---

[2]Greg concedes that the trial court erred·when it found that Chris signed the "marital settlement agreement" in June 1993.

[3]The same judge, Robert C. Bradley, signed the April 1993 support orders, the October 1993 order, the November 1993 judgment, and the January 1994 wage assignment order.

discloses, there were no further proceedings until December 1997, when Greg filed a motion to modify child support, albeit without specifying which order he was seeking to modify. In her responsive papers, Chris indicated she would consent to Greg's request that future child support be set at the guidelines amount. (See Fam. Code, § 4055.)[4] However, on February 11, 1998, Chris signed an affidavit of arrearage for the period May 1993 through February 1998. Based on Chris's affidavit, the Family Support Division of the Humboldt County District Attorney's office obtained a wage assignment order on April 15, 1998, to collect arrearages of $23,252.79 for child support and $1,750.21 for spousal support.

On May 15, 1998, Greg filed a motion seeking spousal support from Chris in the amount of $1,750 per month, and asking that the November 1993 judgment "be quashed based on equity." On July 17, 1998, the parties agreed to reduce Greg's future child support obligation to $1,150 per month and to eliminate spousal support, effective January 1, 1998.

On June 5, 1998, the trial court held a hearing on Greg's motion to modify the April 1993 support orders. Chris testified that she did not discover the discrepancy between the amounts specified in the November 1993 judgment and the amounts specified in the October 1993 order until June 1997. Greg testified that he understood the October 1993 order to be controlling, and viewed the November 1993 judgment as "just something that made us officially divorced." He admitted he "ignored" the November 1993 judgment insofar as it required him to pay spousal support and a greater amount of child support.

On September 1, 1998, the trial court entered an order finding that insofar as Greg's motion was one to set aside the November 1993 judgment, it was filed beyond the one-year period for modification of stipulated judgments based on fraud or mistake. (§ 2122, subds. (a), (e).) However, the court further found that Chris had "by her conduct, waived her right to the support amounts contained in the judgment *filed* in November 1993." Accordingly, the trial court quashed the April 15, 1998 wage assignment order, and enjoined Chris from any further attempt to collect the difference between the amount of support due under the October 1993 order and the November 1993 judgment.

Chris moved for reconsideration of the September 1, 1998 order, arguing that it was contrary to the evidence presented at the hearing on Greg's motion. She further contended that the trial court's order was an improper retroactive modification of child support. (See § 4009.) In a declaration filed

---

[4]All further statutory references are to the Family Code unless otherwise indicated.

in opposition to Chris's motion for reconsideration, Greg acknowledged that he received the January 1994 wage assignment order, realized it called for the amounts set forth in the April 1993 support orders, and called Chris to ask for an explanation. In a declaration filed in support of her motion for reconsideration, Chris acknowledged that Greg called her soon after the 1994 wage assignment was served upon his employer, "shouting and otherwise demonstrating great anger," and threatening to move to Texas and cut off all contact with the children if she did not withdraw the wage assignment. Chris claimed she was "[u]pset by his outbursts and frightened by his threats," and "finally agreed to tell [her] attorney to withdraw the wage assignment as [Greg] demanded." Greg claimed that Chris told him the wage assignment was filed by mistake. He did not, however, rebut or deny Chris's claims about his intimidating conduct.

On November 1, 1998, a court commissioner ordered the September 1, 1998 order vacated and took the motion for reconsideration under submission. On February 19, 1999, the commissioner issued a ruling denying the motion for reconsideration and reinstating the September 1, 1998 order. A formal order embodying the commissioner's ruling was filed March 29, 1999. This timely appeal followed.

## II. DISCUSSION

As we have noted, the trial court granted Greg's motion to quash the April 15, 1998 wage assignment on the grounds that Chris waived her right to the support amounts contained in the judgment filed in November 1993. As we will discuss, although there are two California cases that recognize and apply the theory of postjudgment "waiver" of court-ordered child and spousal support, recently enacted statutory provisions cast doubt upon the rules stated in those cases. Even if those cases retain precedential value, however, the evidence in this record was insufficient to support a finding that Chris voluntarily relinquished her rights, and those of her children, to receive child and spousal support as provided in the November 1993 judgment.

We turn first to the question whether the October 1993 order or the November 1993 judgment was legally effective to determine Greg's support obligations as of November 12, 1993, when judgment was entered and, for all intents and purposes, the parties' dissolution action was concluded. The answer is straightforward: the temporary support order of October 1993 was superseded by the permanent support order in the November 1993 judgment. (*In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 380 fn. 1 [205

Cal.Rptr. 880].)[5] Such a conclusion is implied in the trial court's findings that Chris was initially entitled to but "waived" any right to collect support as provided in the November 1993 judgment, and that Greg was mistaken in his belief that the October 1993 order governed his support obligations. Greg has admitted that he had notice of entry of the November 1993 judgment shortly after it was filed in Ventura County Superior Court. Thus, once entered, the judgment for child and spousal support was per se enforceable until paid in full, and was not retroactively modifiable either as to accrued arrearages or any interest due thereon. (§§ 3651, subd. (c), 4502, 5100, 5101; Code Civ. Proc., § 683.130, subd. (c); see also *In re Marriage of Garcia* (1998) 67 Cal.App.4th 693, 697-698 [79 Cal.Rptr.2d 242].)

Greg does not suggest that the trial court erred, in the modification proceedings commenced in 1997, when it concluded it had no power to vacate or retroactively modify the November 1993 judgment based on fraud or mistake pursuant to section 2122, subdivision (a) or (e), or any other statute providing grounds for relief from a judgment that has been entered and become final.[6] So we must decide whether there was any other viable legal or equitable theory under which Greg was, or properly could have been, relieved of his support obligations under the November 1993 judgment. As we have noted, the trial court found and concluded that Chris "waived" any right to collect the child and spousal support arrearages claimed pursuant to that judgment. We believe this theory was legally and factually unsupported.

There are only two California cases discussing the concept of "waiver" of a right to support established by a final judgment. In *Graham v. Graham* (1959) 174 Cal.App.2d 678 [345 P.2d 316], a 1947 divorce decree required the husband to pay $50 per month in alimony and $80 per month in child

---

[5] Although Chris might have been able to appeal the October 1993 order (see *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1216 [45 Cal.Rptr.2d 555]), any appeal from that order would have been rendered moot by the subsequent entry of judgment in November 1993.

[6] For the first time on appeal, however, Greg suggests that the entry of a judgment containing the April 1993 support orders was mere "clerical error" that could have been corrected at the time of entry and still could be corrected. (See Code Civ. Proc., § 473, subd. (d); *Estate of Goldberg* (1938) 10 Cal.2d 709, 715 [76 P.2d 508].) Greg does not cite any authority in support if this argument which is, in any event, one he should have directed to the trial judge who signed the 1993 orders and judgment. (Code Civ. Proc., § 473, subd. (d); see also *Estate of Goldberg, supra,* 10 Cal.2d at p. 715; *Martin v. Ray* (1946) 74 Cal.App.2d 922, 928 [170 P.2d 75] [trial court properly modified judgment to conform to prior memorandum decision].) Nor does Greg cite or otherwise provide any evidence suggesting that the rendering of the November 1993 judgment was inadvertent judicial error. We have no way of knowing whether Judge Bradley thought better of his October 1993 modification order or whether he overlooked it when he was presented with, and signed, the fully executed stipulated judgment in November 1993. Either scenario is equally plausible on this record.

support. (*Id.* at p. 680.) In 1958, the husband filed a motion seeking to reduce his support obligation to $50 per month. The wife objected to the entertainment of the husband's motion on the ground that he had never fully complied with the original support order and was, thus, in contempt of court and not entitled to be heard. In an affidavit, the husband responded to the wife's contempt argument by asserting that, within days of entry of the divorce decree, the parties had entered into an oral agreement under which the wife was to be paid a combined support payment of $25 per week, and that the husband thereafter had regularly paid such sums to the wife. (*Id.* at p. 681.) At the hearing on the motion, the husband testified as follows: " 'Well, I just told her at that time I just couldn't pay $130 a month, so we talked it over and I said, "I'll pay you $25 a week," and that is the agreement I came to and I have been paying it ever since.' " (*Id.* at p. 682.) The wife admitted she had never taken any legal steps to enforce the 1947 support order, but denied that she had agreed to this reduction. As the *Graham* court noted, moreover, nothing in the husband's testimony showed that the wife actually agreed to accept $25 a week in full payment of the court-ordered amount. (*Id.* at pp. 681, 682.) Nevertheless, the trial court found on the conflicting evidence, and inferences arising therefrom, that the husband was not in arrears because the wife had "waived" all sums in excess of $25 per week. (*Id.* at p. 683.) The trial court then proceeded to grant the husband's motion, in part, reducing his child support obligation to $15 per week. (*Id.* at p. 681.)

The wife appealed the modification order, contending that an order of support cannot as a matter of law be modified by an executed oral agreement or as to past due installments. (*Graham v. Graham, supra,* 174 Cal.App.2d at p. 683.) The Court of Appeal affirmed, holding as follows: "Although no case has been found expressly holding that one may waive the benefit of an award for alimony and [child] support, the law is well settled that one may waive any civil right [citations], and that '[a]ny one may waive the advantage of a law intended solely for his benefit.' [Citation.] A wife may waive her right to alimony pendente lite [citation], and her right to avoid a transfer of community real property executed solely by her husband. [Citation.] There appears to be no valid reason why a woman cannot also waive her right to a portion of the alimony and [child] support provided for by a decree of divorce so as to relieve her former husband of a charge of contempt based upon a wilful disobedience of said order. The mandate is clear that a court may not modify an award as to accrued installments ([former] Civ. Code, § 139), but that is not the situation here. And the question here is not whether the parties themselves modified the *court order* but rather whether or not a *waiver* was effected by an agreement between [the wife] and [the husband]. [¶] . . . . Although here the evidence of a waiver by express

agreement certainly is equivocal, yet when the testimony is considered in connection with the conduct of [the] plaintiff in failing to take any steps to enforce payment in accordance with terms of the decree for over 10 years, we cannot say as a matter of law that the conclusion drawn by the trial court was not justified. We therefore hold that the finding that [husband] was not in arrears and therefore not in contempt and entitled to be heard finds adequate support both in the facts and in the law." (*Graham, supra,* 174 Cal.App.2d at pp. 683-684.)[7]

*Graham* was followed by the court in *In re Marriage of Paboojian* (1987) 189 Cal.App.3d 1434 [235 Cal.Rptr. 65] (*Paboojian*). In *Paboojian*, the trial court quashed a writ of execution as to amounts of spousal support provided by a December 1968 divorce decree that went unpaid until 1984, at which time the wife obtained the writ to collect arrearages for the preceding 10-year period. The obligor husband testified that he had had serious financial trouble around the time of the divorce and had called his ex-wife in January 1969 and said, " 'I can barely pay [child] support and you've got to agree I can't pay alimony.' " The husband further testified that his ex-wife said, " 'Take care of the children and forget the alimony,' " but the wife denied ever making such a statement. The husband thereafter fully satisfied his child support obligations, and never made any spousal support payments. On this evidence, the trial court found that the wife "waived spousal support in the January 1969 telephone conversation and quashed the writ of execution." (*Id.* at p. 1437.)

The Court of Appeal affirmed, reasoning as follows: " 'Unless otherwise provided by law, any person may waive the advantage of a law intended for his [or her] benefit. (Civ. Code, § 3513.) Waiver is the voluntary relinquishment of a known right. [Citation.] To constitute a waiver, it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished.' " (*Paboojian supra,*

---

[7]The *Graham* court did not explain how the right to receive *child* support may be deemed an " 'advantage of a law intended solely for his [or her] benefit,' " such that a parent may validly waive that right. (*Graham v. Graham, supra,* 174 Cal.App.2d at pp. 683-684.) On the contrary, even in 1959, we would have thought it well settled that child support is owed to the child, not to the spouse identified in the support order as the recipient of child support payments. (See *Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 367 [124 Cal.Rptr. 101], and cases cited therein; see also *Evans v. Evans* (1908) 154 Cal. 644, 645-646 [98 P. 1044] [a mother may not forfeit her children's right to support from their father].) This analytical flaw in the reasoning of the *Graham* court may explain why no other published case has upheld a finding of post-judgment "waiver" of *child* support, much less invoked *Graham* to bar enforcement of a final judgment containing an order for payment of child support, and may well relegate *Graham* to the status of "sport."

189 Cal.App.3d at p. 1437; quoting *Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41 [124 Cal.Rptr. 852].) The *Paboojian* court relied on *Graham* to conclude that an express oral agreement prospectively waiving spousal support was sufficient to bar collection of the arrearages. (*Graham v. Graham, supra,* 174 Cal.App.3d at p. 1438.)

We conclude that neither *Graham* nor *Paboojian* supports the trial court's order quashing the wage assignment in this case. The holding in *Graham* was specifically directed to the trial court's finding that the husband was not in contempt of court for having failed to pay child and spousal support in conformity with the divorce decree (*Graham v. Graham, supra,* 174 Cal.App.2d at p. 684), and does not authorize a finding of waiver so as a bar to collection of unpaid child support. If it is still good law, *Paboojian* might bar collection of *spousal* support based on postjudgment "waiver" of the rights established by the divorce decree. But both *Graham* and *Paboojian* are, in any event, plainly distinguishable from the instant case.

Unlike the husbands in *Graham* and *Paboojian,* Greg presented no evidence of an express oral agreement with Chris to accept less than the amounts required by the judgment of dissolution and to forego collection of the difference, or other conduct so inconsistent with an intent to enforce the rights to support established by the judgment as to induce a reasonable belief that those rights had been relinquished.[8] The only evidence about the parties' postjudgment conduct presented in the hearing on Greg's motions was—as the trial court found—that "[Greg] paid and [Chris] accepted, according to the October 1993 order, $1,666 [*sic*] in child support and nothing in spousal support, instead of $1,860 in child support and $140 in spousal support, according to the November 1993 judgment." However, neither *Graham* nor *Paboojian* can be stretched to say that mere acquiescence in payment of an amount of child and spousal support less than that provided by a final dissolution judgment is sufficient to constitute a waiver or otherwise to bar collection of the unpaid amounts.[9]

Nor did Chris wait as long to enforce her and the children's rights to support under the November 1993 judgment as did the wives in *Graham* and

---

[8]In its statement of decision, the trial court found that "on October 19, 1993, the parties *stipulated* and the judge signed an order, in regard to the August motion, that reduced child support to $1,663.00 and eliminated spousal support effective November 1993." There was no such stipulation, and Greg acknowledges as much.

[9]In response to Chris's motion for reconsideration, Greg acknowledged that he had received a copy of the January 1994 wage assignment, calling for the support amounts due under the April 1993 support orders and the November 1993 judgment, and had called Chris to ask her to explain. He claimed Chris said the filing of the wage assignment was "a mistake." In her declaration, Chris admitted that she discussed the discrepancy between the October 1993 order and the November 1993 judgment with Greg, and that she "finally agreed" to tell her attorney to withdraw the wage assignment order. However, she claimed that Greg had shouted at her and frightened her into forgoing enforcement of the November 1993 judgment. The trial

*Paboojian*, who delayed beyond the then existing, 10-year limitations period for collection of child and spousal support (see Code Civ. Proc., former § 681; *Szamocki v. Szamocki* (1975) 47 Cal.App.3d 812, 818 [121 Cal.Rptr. 231]) before asserting their rights under the divorce decrees in those cases. (*Graham v. Graham, supra,* 174 Cal.App.2d at p. 684 [11 years]; and *Paboojian, supra,* 189 Cal.App.3d at p. 1439 [16 years].) It may have been for that reason that the courts found it necessary to craft an equitable solution for the problems generated by the extended delay in seeking enforcement of the right to support. But it simply cannot be said that the four-year delay in the instant case—especially in the absence of an express agreement to forego collection of the unpaid amounts—was " 'conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished.' " (*Paboojian, supra,* at p. 1437.)

Furthermore, whatever the merits of *Graham* and *Paboojian* when decided,[10] we think the "waiver" rule established therein cannot be reconciled with recent legislative developments in the area of child and spousal support enforcement. As we have noted, the current state of the law is that a judgment for child or spousal support, once entered, is per se enforceable *until paid in full,* and is not retroactively modifiable either as to accrued arrearages or any interest due thereon. (§§ 3651, subd. (c), 4502, 5100, 5101; Code Civ. Proc., § 683.130, subd. (c); see also *In re Marriage of Garcia, supra,* 67 Cal.App.4th 693, 697-698 ["With these legislative changes, spousal and family support orders are enforceable in perpetuity until paid."].) These rules were established by the Legislature in a series of statutes enacted and amended between 1992 and 1994. (See Stats. 1992, ch. 718, § 3, pp. 3319-3320, amended Stats. 1993, ch. 876, § 1, pp. 4662-4663, operative Jan. 1, 1994; Stats. 1992, ch. 162, § 10, pp. 464-722, amended Stats. 1993, ch. 876, §§ 21, 22, pp. 4675-4676, operative Jan. 1, 1994; *In re Marriage of Garcia, supra,* at pp. 697-698.) By these recent enactments, the Legislature also made clear that a lack of diligence can no longer be asserted or considered as a defense to the enforcement of child support orders and the collection of arrears. (See §§ 4502, 5100, 5101; *In re Marriage of Garcia, supra,* at pp. 698-699.) That is, in effect, all that was shown in this case.

 Greg contends, however, that we should affirm the trial court order based on the doctrine of laches. That is, he would have us find that Chris

---

court did not consider or resolve the factual dispute thus raised about the voluntariness of any agreement the parties may have reached on these facts.

[10]We have to wonder at the rule announced in *Graham* and *Paboojian.* If an obligor and obligee spouse have, in fact, voluntarily agreed to a reduction in the amount of court-ordered child and/or spousal support—presumably because of some material change of circumstances—why then would the obligor spouse not simply seek court approval for their stipulation via a timely modification motion?

lost any substantive rights she or the children might have had under the November 1993 judgment by unreasonable delay in asserting those rights, with accompanying prejudice to him. In 1997, the Fourth Appellate District held that, despite the "substantive and significant" changes in the statutory provisions governing enforcement of child and spousal support orders (*In re Marriage of Garcia, supra,* 67 Cal.App.4th at p. 698, fn. 4), the defense of laches is still available to thwart a stale attempt at enforcement of a judgment for past due spousal support. (*In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 258, 262 [69 Cal.Rptr.2d 120].) In *In re Marriage of Fogarty & Rasbeary* (2000) 78 Cal.App.4th 1353 [93 Cal.Rptr.2d 653], Division Two of the Second Appellate District extended the holding of *In re Marriage of Plescia* to the collection of child support arrearages. (*Id.* at pp. 1360-1364; cf. *In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 478 [94 Cal.Rptr.2d 156] [declining to extend laches defense to child support enforcement action because of father's "unclean hands"].) ▮ Under the facts of the present case, we do not find that Chris's four-year delay in seeking enforcement of the support orders constitutes laches, as Greg has not demonstrated any undue prejudice to him from the delay. (Cf. *In re Marriage of Plescia, supra,* 59 Cal.App.4th at pp. 256-257 [obligee spouse delayed nine years before attempting to collect unpaid spousal support, during which time the obligor spouse changed his position by retiring under the assumption that there were no arrearages]; *In re Marriage of Fogarty & Rasbeary, supra,* at pp. 1365-1366 [delay of 17 years before attempting to collect unpaid child support, during which time obligor spouse failed to keep record of amounts paid in reliance on assurances by child's custodial grandparents that he did not have to continue paying court-ordered amount of child support, and that he could provide for his daughter by paying for "extras" such as horse gear, summer camp, ski trips].)

Perhaps the real issue here is which party had the burden of clarifying which child support orders were in effect in and after November 1993. At bottom, we believe that Chris was entitled to rely on the entry of the November 12, 1993 judgment as establishing Greg's support obligations, and that it was incumbent upon Greg—upon receiving notice of entry of that judgment—to move immediately to bring the error, if any, to the trial court's attention via a motion to correct or vacate the judgment, or by appeal. Failing that, he was free to seek and obtain a reduction in his support obligations by stipulation or modification motion—as he ultimately did in 1998. He was not free to simply ignore the judgment—as he admittedly did. Having failed to avail himself of the proper procedures for seeking modification of the support orders contained in the November 1993 judgment, Greg is in no position to demand or obtain retroactive approval of this conduct. (*Lehrer v. Lehrer* (1976) 63 Cal.App.3d 276, 279-280 [133 Cal.Rptr. 709]

[trial court declined to quash a wage assignment to collect amounts owing by father who stopped paying child support under the mistaken belief it was not required after the child was emancipated]; see also *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 730-733 [146 Cal.Rptr. 675]; *Spivey v. Furtado* (1966) 242 Cal.App.2d 259, 265, 267 [51 Cal.Rptr. 362].)[11]

## III. CONCLUSION

For all the foregoing reasons, the order of the trial court quashing the April 15, 1998 wage assignment is reversed. Appellant shall recover her costs.

Hanlon, P. J., and Reardon, J., concurred.

---

[11]We think it goes without saying that an obligor spouse is not free to bully or intimidate the obligee spouse into accepting a lesser amount of support. Of course, as we have noted, the trial court did not resolve the factual dispute between the parties on this issue.