Filed 9/23/16  Marriage of Huffman CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| In re the Marriage of TERESA and CHARLES ROBERT HUFFMAN. |  |
| TERESA SCALMANINI,<br><br>          Appellant,<br><br>v.<br><br>CHARLES ROBERT HUFFMAN,<br><br>          Respondent;<br><br>SONOMA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>          Intervener. | A143189<br><br>(Sonoma County<br>Super. Ct. No. SFL-27031) |

After a change in physical custody of the parties' minor child, the Sonoma County Department of Child Support Services (DCSS) moved for an order modifying a child support order.  The trial court granted the motion, ordered Teresa Scalmanini (Mother) to pay child support to Charles Robert Huffman (Father), and excused Father from paying accrued support arrearages.  Mother appeals, arguing the trial court abused its discretion. We agree and reverse.

## I.     STATUTORY BACKGROUND

"California has a strong public policy in favor of adequate child support. [Citations.] . . . In setting guideline support, the courts are required to adhere to certain principles, including these:  'A parent's first and principal obligation is to support his or

1

her minor children according to the parent's circumstances and station in life.' ([Fam. Code,] § 4053, subd. (a).)[1] 'Each parent should pay for the support of the children according to his or her ability.' (§ 4053, subd. (d).) 'Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.' (§ 4053, subd. (f).)" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283.)

"To implement these policies, courts are required to calculate child support in accordance with the mathematical formula set forth in [section 4055]. [Citations.] Determining child support under the guidelines has been criticized as a 'complex and unduly costly' process 'which requires the use of a computer and which is not understood by anyone, least of all the affected parties.' [Citation.] Nevertheless, adherence to the guidelines is mandatory, and the trial court may not depart from them except in the special circumstances enumerated in the statutes." (*In re Marriage of Cheriton, supra,* 92 Cal.App.4th at p. 284, fn. omitted.) "The guideline amount of child support . . . is presumptively correct. (See §§ 4055, 4057, subd. (a).) That presumption may be rebutted by 'admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053 . . . .' (§ 4057, subd. (b).)" (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1359.)

"Support payments usually are paid from present earnings, not liquidation of preexisting assets. The amount of payments owed is computed on the basis of monthly disposable income. ( . . . § 4055, subd. (a).) This figure is generally based on actual earnings, although the trial court has discretion to consider earning capacity instead of actual income ( . . . § 4058, subd. (b)), and child support payments may be changed, in some cases retroactively, if there is a change in actual earnings or earning capacity. [Citations.] [¶] Assets at the time of dissolution play little part in the computation of child support. They may enter indirectly into the calculation in two ways: (1) In assessing

---

[1] Undesignated statutory references are to the Family Code.

earning capacity, a trial court may take into account the earnings from invested assets [citation]; and (2) a court may deem assets a 'special circumstance' [citation] that may justify a departure from the guideline figure for support payments [citation]. But these are exceptional situations; the child support obligation is based primarily on actual earnings and earning capacity." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 670–671, fn. omitted.) "[T]he statutory scheme seeks to mitigate the financial impact of divorce on the children, *not* the parents." (*In re Marriage of de Guigne, supra,* 97 Cal.App.4th at pp. 1361–1362, italics added.)

## II.    FACTUAL AND PROCEDURAL BACKGROUND[2]

In January 2006, Mother and Father divorced. At the time of dissolution, they had two minor children—a son and daughter. Originally, Father was ordered to pay child support to Mother.

In July 2010, the parties entered into a settlement regarding compensation for Mother's community interest in the family home. They agreed Father would pay Mother $168,000 in two installments. Father made the first installment but failed to make the second. Between 2011 and 2014, Mother took various actions to enforce the stipulation. She also sought attorney fees and sanctions.

As of November 2013, the parties' daughter, the remaining minor child, moved in with Father, and he requested DCSS assistance in collecting child support from Mother. DCSS intervened and, on June 16, 2014, filed a motion to modify child support for the then 15-year-old girl. Mother's income and expense statement showed she had been unemployed since March 2014. She was receiving unemployment compensation, and the majority of her expenses were paid by her new spouse. In a "declaration" filed with the court, Mother requested the court "take into account the money that [Father] owes me for

---

[2] We disregard the exhibits Father attached to his respondent's brief, as they are copies of materials outside the appellate record. (Cal. Rules of Court, rule 8.204(d), (e)(2)(C); *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 625 [" 'appellate court is . . . confined in its review to the proceedings which took place in the court below and are brought up for review in a properly prepared record on appeal' "].)

child support arrears plus any applicable interest that was previously ordered. . . . I would ask that there be an amount certain offset from what I owe Father rather than requiring me to pay and Father to pay separately."

On July 29, 2014, the court held a contested hearing regarding child support, at which both Mother and Father represented themselves in propria persona. DCSS also appeared. The parties agreed that Mother had a one percent time share, and Father had, in March 2014, made a $135,000 equalization payment to Mother for her portion of the marital home. Mother expressly agreed that $27,000 of the $135,000 payment was interest on the equalization payment, which had been delayed in excess of three years.

The primary dispute before the trial court was whether the $27,000 interest payment should be considered income for child support purposes. Mother asserted it was not income because Father made the agreed-upon equalization payment only after years of enforcement efforts, requests for sanctions, and expenditure of $90,000 in attorney fees. Mother also insisted the $27,000 should not count as income because it was a one-time payment and she no longer had any of the funds, having spent well over that amount and incurring significant credit card debt to recover the equalization payment. The trial court sympathized, but nonetheless deemed the interest income for child support purposes. Later in the hearing, Mother stated, "I'm a little concerned, because I did speak with my previous attorney about this, and she said it should not be included as [income] . . . ." The trial court disagreed with Mother's characterization, explaining, "You're going to pay tax on that; therefore, it's income."

At DCSS's suggestion, and in order to reach what it viewed to be a fair resolution, the trial court eliminated $6,000 in child support arrears Father owed to Mother by subtracting it from Mother's $27,000 of interest income—reducing her interest income to $21,000. Mother asked, "[s]o he doesn't have to pay the arrears?" But she raised no objection. The trial court explained: "I gave [Father] credit for it, in order to help [Mother] with a lower child-support amount." The trial court then amortized $21,000 over the time remaining before the parties' daughter reached the age of majority (24 months). This resulted in $875 of monthly interest income, which in addition to Mother's

4

unemployment benefits, gave Mother $2,825 in monthly taxable gross income.  Based on this figure, the trial court ordered Mother to make monthly child support payments to Father, in the amount of $462, beginning on July 1, 2014.

On August 8, 2014, Mother, now represented by counsel, filed a motion for reconsideration of the July 29 order.  Mother reasserted that the interest payment was made on a one-time basis and she no longer had the funds.  Mother also argued, for the first time, the $27,000 was not truly interest, but really "additional equity," and it had been characterized as interest only by Father.[3]  Accordingly, Mother argued the trial court:  (1) incorrectly characterized the one-time payment as interest income; (2) improperly considered Father's debt as a result of the equalization payments when determining a fair amount for her child support payments; (3) improperly considered her new spouse's income; and (4) erroneously zeroed out Father's child support arrears.

On September 25, 2014, Mother filed a timely notice of appeal from the July 29 order.[4]  On January 22, 2015, the trial court denied the motion for reconsideration.  The trial court emphasized it did not deviate from the guidelines.  It also made clear Father's income and expenses were not particularly important to the calculation because of Mother's one percent time share; Mother's new spouse's income was not included in the calculation; and the July 29 order was based solely on Mother's unemployment and interest income.  The trial court agreed it had zeroed out $6,000 Father owed in

---

[3] In support of her motion for reconsideration, Mother submitted a declaration from Marshall Bluestone, an attorney who previously represented her.  Bluestone declared that Mother and Father agreed to a $135,000 settlement for Father's various overdue payments.  Bluestone further declared the parties had no agreement as to the characterization of the lump sum payment.  However, "it was the intent of the parties to resolve all of the outstanding issues:  attorney fees and costs, sanctions, principal and interest."  During the drafting of the mutual release, Father asked that $27,000 of the payment be characterized as interest, and Mother accommodated the request.

[4] The July 29 order is appealable.  (See Code Civ. Proc, § 904.1, subd. (a)(2); *In re Marriage of Zimmerman* (2010) 183 Cal.App.4th 900, 906 ["postjudgment orders regarding modification of support are appealable"]; *In re Marriage of de Guigne, supra,* 97 Cal.App.4th at p. 1359 ["even temporary support orders are appealable"].)

"principal" support arrearages. However, the trial court suggested Mother could still seek interest on Father's arrears, albeit recognizing that calculating interest owed to Mother would be "a mathematical disaster to try and sort it out."

### III. DISCUSSION

Mother contends that the trial court's July 29 order constitutes an abuse of discretion because the trial court (1) considered the $27,000 "interest payment" as income to Mother; (2) considered Mother's new spouse's income; (3) had no legal basis to zero out Father's child support arrears and interest; and (4) failed to properly consider Father's income. We address Mother's arguments in a different order. Because the trial court exceeded its jurisdiction in excusing Father from paying accrued child support arrearages, we need not reach all of Mother's contentions on appeal.

In considering the modification of a child support order, "[o]ur review is limited to determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion. [Citation.] We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order." (*In re Marriage of de Guigne, supra,* 97 Cal.App.4th at p. 1360.) " '[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below.' " (*In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 116.)

"In exercising its discretion, however, the trial court must follow established legal principles. [Citation.] To decide whether the trial court followed established legal principles and correctly interpreted the child support statutes, we apply the independent standard of review." (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 731; accord, *In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371–1372 [statutory interpretation of "income" is a "question of law that we review de novo"].)

6

A.    *Child Support Arrears*

Mother maintains that, by zeroing out Father's child support arrears, "the [trial] court deprived [her] of the ability to receive arrears and interest under the law that she was owed for a past due debt, even if there is a change of circumstances in the future. [Father] was given a gift of $6,000 even though that amount of child support [from Mother] has not become due and owing."  We agree.

"The Legislature has established a bright-line rule that accrued child support vests *and may not be adjusted up or down*.  (See §§ 3651, subd. (c)(1), 3653, subd. (a), 3692.)"[5]  (*In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 625–626, italics added.)  "The burden . . . rests on each parent, respectively, to seek adjustment going forward.  That is, neither the obligor nor the obligee is entitled to modification of support amounts that predate notice to the other party of the filing of a motion to modify support.  (§§ 3651, subd. (c)(1), 3653, subd. (a); see *In re Petropoulos* (2001) 91 Cal.App.4th 161, 174–175.)"  (*Tavares*, at pp. 628–629, italics omitted.)  Thus, a trial court may modify a child support order prospectively, but it is well established that section 3651, subdivision (c)(1), precludes a court from modifying or forgiving accrued support arrearages.  (*In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1213; *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80 [trial court exceeds its jurisdiction by absolving an obligor of support arrearages or interest thereon].)

---

[5] As relevant here, support orders "may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate."  (§ 3651, subd. (c)(1); § 3653, subd. (a) [support order modification or termination "may be made retroactive to the date of the filing of the notice of motion or order to show cause" or "to any subsequent date," except as provided in § 3653, subd. (b) or federal law].)  Additionally, "a support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate."  (§ 3692.)

Although neither Father nor DCSS raise the argument,[6] the record suggests that Mother may have waived her right to complain about the offset. Prior to the hearing on modification, Mother specifically requested the trial court "take into account the money that [Father] owes me for child support arrears" and offset that from what she would prospectively owe Father. " 'It is settled that where a party by his conduct induces the commission of an error, under the doctrine of invited error he is estopped from asserting the alleged error as grounds for reversal.' " (*In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1640.)

The doctrine is inapplicable here because, just as a trial court cannot modify or forgive arrearages, parents cannot waive arrearages by agreement or other conduct. (*In re Marriage of Sabine & Toshio M., supra,* 153 Cal.App.4th at pp. 1213–1214; *In re Marriage of Hamer* (2000) 81 Cal.App.4th 712, 718–722, superseded by statute on other grounds, as stated in *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 185 & fn. 6.) Child support obligations are to the child, not the other parent. (*Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366–367.) Thus, although the parents can settle a bona fide dispute regarding arrears, the child's right to support cannot be waived by the parent. (*Sabine & Toshio M.*, at p. 1214.)

In any event, it appears Mother was not asking the court to forgive all of Father's arrearages, but rather offset, *as they became due*, each of her own accrued support payments against Father's arrearages, which would continue to accrue interest. (See *In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 251 ["[d]elinquent child support payments accrue postjudgment interest under the rules applicable to installment judgments"]; *In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1056; Code Civ. Proc., § 685.020, subd. (b).) The trial court's order is most troubling in this respect—it completely interferes with the requirement that Father, as a defaulting parent, pay interest on support arrears. " 'Statutory interest on unpaid child support payments accrues as a

_____

[6] DCSS does not object to a remand for reconsideration of Father's child support arrears.

matter of law as to each installment when each installment becomes due. . . . [¶] Accrued arrearages are treated like a money judgment for purposes of assessing statutory interest. Unless otherwise specified in the judgment, interest accrues as to each installment when each installment becomes due and continues to accrue for so long as the arrearage remains unpaid.' [Citation.] Because accrued arrearages are treated like money judgments, 'courts cannot retroactively modify or terminate the arrearages.' " (*McClellan*, at p. 251.) "[T]he accrual of interest is not a discretionary matter but is instead controlled by statute and continues until a judgment is satisfied. (Code Civ. Proc., § 685.010.)" (*McClellan*, at p. 259.)

"[W]hile a court may not retroactively modify past installments, it can deny *enforcement* of a judgment on equitable grounds." (*In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 855, italics added; accord, *County of Santa Clara v. Wilson* (2003) 111 Cal.App.4th 1324, 1326; *Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858; *Jackson v. Jackson, supra,* 51 Cal.App.3d at pp. 367–368.) For instance, arrearages may be reduced by amounts accruing during a period in which there was a de facto change in custody and the obligor had full-time physical custody of the child. (*In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 180, 182.) However, here, DCSS filed a motion for modification of child support, not an enforcement action. Thus, the court's equitable enforcement powers are not at issue. (*Wilson*, at p. 1326.) No "case holds that a court's equitable powers with respect to child support extend beyond enforcement actions or permit the violation of child support statutes." (*Id.* at p. 1327.)

The trial court acted in excess of its jurisdiction by "zeroing out" Father's child support arrears. (*In re Marriage of Perez, supra,* 35 Cal.App.4th at p. 79.) Accordingly, we must remand for a new determination of child support.

B.    *Interest*

Because the issue may arise again on remand, we briefly address Mother's argument that the trial court improperly included the $27,000 interest payment as income. Mother primarily quibbles with the characterization of the $27,000 payment as interest, suggesting there is no substantial evidence it was anything other than a payment of

9

attorney fees, costs, or sanctions. This argument need not delay us long because Mother waived it. Before the trial court, Mother clearly conceded the $27,000 was interest and did not argue otherwise until she filed a motion for reconsideration. (See *In re Marriage of Ilas, supra,* 12 Cal.App.4th at p. 1640; *In re Marriage of Heiner* (2006) 136 Cal.App.4th 1514, 1520–1521; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1168 ["party seeking reconsideration of a prior ruling upon an alleged different set of facts must 'provide both newly discovered evidence and an explanation for the failure to have produced such evidence earlier' "].)

Nor are we persuaded that the interest payment falls outside the statutory definition of income. Section 4058, subdivision (a)(1), provides: "The annual gross income of each parent means income *from whatever source derived*, except as specified in subdivision (c) and includes, but is not limited to . . . [i]ncome such as commissions, salaries, royalties, wages, bonuses, rents, dividends, pensions, *interest*, trust income, annuities, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, social security benefits, and spousal support actually received from a person not a party to the proceeding to establish a child support order under this article." The only statutory exceptions are (1) "income derived from child support payments actually received," (2) "income derived from any public assistance program, eligibility for which is based on a determination of need," and (3) "[c]hild support received by a party for children from another relationship." (*Id.*, subd. (c).) We agree with DCSS that section 4058 makes clear the $27,000 in interest qualifies as income. (See *Brothers v. Kern* (2007) 154 Cal.App.4th 126, 134 ["interest income is a proper basis for calculating child support"].) Characterization of the interest payment as income is also consistent with its traditional understanding as "the gain or recurrent benefit that is derived from labor, business, or property [citation] or from any other investment of capital." (*In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 650.)

In her reply brief, Mother contends the $27,000 payment is not taxable under the Internal Revenue Code and should be considered a gift rather than income for child support purposes. The definition of "income" used in section 4058 "was 'lifted' straight

10

from the Internal Revenue Code." (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1080.) Thus, "although federal tax law is not conclusive on the interpretation of section 4058, it is persuasive." (*In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 231; accord, *In re Marriage of Alter, supra,* 171 Cal.App.4th at p. 735 ["while the tax model will be helpful in many cases, it is not controlling"].) Mother relies on section 1041 of the Internal Revenue Code, which provides in relevant part: "No *gain or loss* shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)—[¶] (1) a spouse, or [¶] (2) a former spouse, but only if the transfer is incident to the divorce. [¶] (b) Transfer treated as a gift . . . ." (26 U.S.C.S. § 1041, subds. (a)–(b), italics added.) This merely means that a division of community property incident to divorce will not be construed as a sale and capital gains received thereby are not taxable. The section does not speak to interest on a delayed settlement payment, as is at issue here.

Furthermore, Mother's reliance on *In re Marriage of de Guigne, supra,* 97 Cal.App.4th 1353 does not change our conclusion. In that case, the question was whether a trial court could impute income from a father's *unliquidated assets*—a 47-acre estate in Hillsborough—in making a child support order. (*Id.* at pp. 1357–1358, 1362.) The court concluded that, because an order based solely on the father's *actual* income would result in a drastic reduction in the children's standard of living, the trial court did not abuse its discretion in imputing income from assets, including the estate, that did not generate actual income. (*Id.* at pp. 1358, 1360, 1362.)

This is not an imputation case, as the trial court relied solely on Mother's actual income. Nor are we persuaded that the trial court should have ignored the interest payment because Mother testified she had already spent it to pay attorney fees and credit card debt. The obligation of both parents to support their child is primary and the trial court does not abuse its discretion by considering already expended funds as income for child support purposes. (See *In re Marriage of Pearlstein, supra*, 137 Cal.App.4th at p. 1376; *In re Marriage of Kirk* (1990) 217 Cal.App.3d 597, 607–608.)

11

In agreeing that the $27,000 payment was properly characterized as interest income, we do not address the manner in which the court considered this one-time, lump-sum payment in calculating Mother's prospective income, and express no opinion on this issue. In calculating support anew, we presume the court will consider all relevant factors in determining Mother's annual and monthly "net disposable income" for purposes of support. (See §§ 4060, 4064; *In re Marriage of Riddle, supra,* 125 Cal.App.4th at p. 1082.)

## IV. DISPOSITION

The order dated July 29, 2014 is reversed. The trial court is directed to reinstate Father's child support arrearages and issue a new and properly calculated child support order. The parties shall bear their own costs on appeal.

_____

BRUINIERS, J.

WE CONCUR:

_____

JONES, P. J.

_____

NEEDHAM, J.