Filed 9/25/13  Marriage of Watrous CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of BARBARA WATROUS and DANIEL WATROUS. | |
| BARBARA WATROUS,<br><br>Appellant,<br><br>v.<br><br>DANIEL WATROUS,<br><br>Respondent. | F064880<br><br>(Super. Ct. No. VFL198910-02)<br><br>**OPINION** |

---

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Jennifer C. Shirk, Judge.

McCormick, Barstow, Sheppard, Wayte & Carruth, Jerry D. Casheros and Kristi Kleinberg for Appellant.

Stanley M. Michner for Respondent.

-ooOoo-

---

[*]     Before Wiseman, Acting P.J., Levy, J. and Kane, J.

In this family law case, appellant Barbara Watrous (Barbara) filed an order to show cause seeking (i) a determination of child support arrearages allegedly owed by respondent Daniel Watrous (Daniel) and (ii) an increase in the monthly spousal support being paid to her by Daniel. The trial court denied both requests. On the issue of arrearages, the trial court found dispositive the fact that the parties had previously entered into a stipulation to settle all child support arrearages for a lump sum payment by Daniel of $10,000. On the issue of spousal support, the trial court held that the current level of support ($2,500 per month) was sufficient under the criteria of Family Code section 4320.[1] Barbara appeals from both denials of relief. We discern no abuse of discretion regarding spousal support and affirm that part of the trial court's order. However, in light of the rule that already accrued child support cannot be bargained away, we conclude that the trial court should have determined child support arrearages. Accordingly, we reverse the order regarding child support arrearages and remand that matter back to the trial court to ascertain the precise amount due.

## FACTS AND PROCEDURAL HISTORY

Barbara and Daniel were married on June 12, 1982, and separated on January 2, 2002—a marriage of 19½ years. They had four children together, all of whom were minors at the time of separation. Barbara and Daniel entered into a marital settlement agreement on September 8, 2004, which became the judgment of the trial court. In that judgment, Daniel was ordered to pay $5,000 per month in child support, continuing until each minor child either turned 18 years of age or (if still in high school at age 18) graduated from high school. The $5,000 child support obligation was blanket or unallocated, meaning that it was not broken down into specific sums as to each child. The judgment also required Daniel to pay Barbara the sum of $2,500 per month as spousal support.

---

[1] Unless otherwise indicated, all further statutory references are to the Family Code.

Subsequently, when the parties' oldest son turned 18 and graduated from high school in May 2006, Daniel unilaterally reduced his monthly child support payment to $3,333 per month. Daniel admitted that he did not obtain leave of the court to reduce the amount he paid in child support. Later, when the parties' second oldest son graduated from high school, Daniel further reduced his child support payment to $1,000 per month, again without seeking leave of the court.

Eventually, in August 2007, Daniel filed a motion to modify child support based on the fact that all but one of the parties' children had reached the age of majority. The trial court ruled on November 26, 2007, that child support would be reduced to $1,500 per month effective September 1, 2007. However, the trial court denied Daniel's request "to retroactively modify the previous blanket order of child support …." Said denial of Daniel's request (to retroactively modify past child support) meant that Daniel was necessarily in arrears, since he had not been paying the full amount of the "previous blanket order" of $5,000 per month.

In July 2008, the parties signed and filed a stipulation regarding child support arrears. It stated: "The parties have disputed the issue of the amount of child support arrears, if any, owed by [Daniel] to [Barbara] for the period covering June, 2006 through November, 2007. This stipulation is a compromise and resolution of this disputed issue …." The stipulation stated that Daniel would pay the sum of $10,000 in full satisfaction of the parties' dispute concerning child support arrears. The stipulation was signed by each party and their (then) legal counsel, and was made an order of the court.

In April 2011, the parties' youngest son turned 18 years of age and Daniel's child support obligations ended. Thereafter, Barbara sought the assistance of legal counsel because she was financially affected by the change in circumstances relating to the termination of child support.

On September 30, 2011, Barbara filed an order to show cause seeking a determination of child support arrears and an increase in the amount of spousal support

3.

she received each month. As to child support arrears, Barbara argued there could not have been a bona fide dispute concerning such arrears, despite the wording of the stipulation. According to Barbara, it was simply a matter of doing the math for the months that Daniel failed to pay the full amount due of $5,000. Since the stipulation sought to bargain away previously accrued child support when the amount due was not actually in dispute, it was not enforceable. Accordingly, Barbara requested that the trial court make a determination of the amount of child support arrears due, which she said was more than $30,000, plus accrued interest, even after crediting Daniel with the $10,000 previously paid. Secondly, Barbara asked the trial court to upwardly modify her spousal support. In support of that request, she emphasized the great disparity between Daniel's income and hers, and argued, among other things, that she needed the increase in spousal support to maintain the standard of living the parties had enjoyed during their marriage.

The trial court conducted the order to show cause hearing on February 27, 2012. After taking the matter under submission, the trial court issued its ruling on March 28, 2012. The trial court denied any relief regarding child support arrears on the ground that the parties' stipulation was effective as "a compromise and resolution of that disputed issue." Regarding spousal support, the trial court examined the factors set forth in section 4320 and concluded, on balance, that no increase to the existing level of support (i.e., $2,500 per month) was warranted.

Barbara's timely appeal followed.

**DISCUSSION**

## I. Child Support Arrears

Barbara contends the trial court erred in failing to determine previously accrued child support owed by Daniel. Where, as here, the pertinent evidence on the issue of arrears is not in dispute and the question involves the correct application of law, we review the trial court's order de novo. (*In re Marriage of Sabine & Toshio M*. (2007) 153

4.

Cal.App.4th 1203, 1212; *In re Marriage of Schofield* (1998) 62 Cal.App.4th 131, 137.) "We are not bound by the trial court's stated reasons for its ruling … as we only review the ruling and not its rationale." (*Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 429.)

Accrued support is treated with a special deference under the law. Section 3651, subdivision (c)(1), provides that "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." This prohibition against retroactive modification of support applies whether or not the support order is based upon an agreement between the parties. (§ 3651, subd. (e).) "[A]ccrued" simply means "past due." (*Taylor v. Superior Court* (1990) 218 Cal.App.3d 1185, 1188.) Section 3651, subdivision (c)(1), continued without substantive change in the existing law that "'[t]he provisions of any agreement or order for the support of either party* shall be subject to subsequent *modification or revocation* by court order *except* as to any amount that *may have accrued* prior to the date of filing of the notice of motion or order to show cause .…'" (*In re Marriage of Sabine & Toshio M.*, *supra*, 153 Cal.App.4th at p. 1213, italics added.) As a result of this statutory provision, trial courts are precluded from retroactively modifying accrued support payments or arrearages. (*Id.* at pp. 1213-1214; *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80.) Likewise, the parties themselves may not forgive or waive such support arrearages. (*In re Marriage of Sabine & Toshio M., supra,* at pp. 1213-1217; *In re Marriage of Hamer* (2000) 81 Cal.App.4th 712, 718-722.)

These principles are particularly important where, as here, child support is concerned. The obligation of child support runs to the child and not the parent. (*In re Marriage of Comer* (1996) 14 Cal.4th 504, 517.) Accordingly, the child's right to such support cannot be limited or abrogated by his or her parents. (*Ibid.*, citing *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 449.) "In essence, the parent, to whom such support is paid, is but a mere conduit for the disbursement of that support." (*Williams v. Williams*

5.

(1970) 8 Cal.App.3d 636, 640.) Therefore, an agreement between parents purporting to modify the child's right to support is not binding on either the court or the child. (*Hoover-Reynolds v. Superior Court* (1996) 50 Cal.App.4th 1273, 1279.)

Of course, trial courts have authority "to determine whether any arrearages exist and, if so, the amount due." (*In re Marriage of Sabine & Toshio M.*, *supra*, 153 Cal.App.4th at p. 1214.) "Nor are the parties precluded from settling all disputes that might affect the calculation of arrearages. 'When a dispute, having the ring of truthfulness on each side, arises, concerning an amount due under an obligation, as in a case where … an agreement is … made to accept a lesser sum in full satisfaction of the amount [in controversy], the obligation is cancelled by a tender and acceptance of the lesser sum in full payment.' [Citation.] Thus, where a husband asserted that he owed $250 a month in spousal support, and the wife contended that $300 was the correct amount, they could resolve their differences in a manner that was binding on the court. [Citation.]" (*Id.* at pp. 1214-1215.)

But such "an accord and satisfaction" requires the existence of a bona fide dispute. (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1058.) In the case of *In re Marriage of Sabine & Toshio M.*, the father agreed to pay approximately one-third of the arrearages in exchange for a release as to the balance. Since there was no bona fide dispute as to the *amount* of arrearages, the Court of Appeal held there was no consideration to support the alleged settlement agreement. (*In re Marriage of Sabine & Toshio M.*, *supra*, 153 Cal.App.4th at p. 1215.) The settlement agreement was therefore unenforceable and, under section 3651, subdivision (c)(1), the trial court had no authority to accept or approve the purported settlement of arrearages for less than the full amounts due. (*In re Marriage of Sabine & Toshio M.*, *supra*, at pp. 1206, 1217.)

In the present case, the trial court accepted without any analysis or inquiry the parties' statement in the stipulation that Daniel's payment of $10,000 to Barbara was in settlement of a dispute as to the amount of child support due. We fail to see how the

6.

amount of child support arrears could possibly have been in any doubt when the existing child support order required Daniel to pay an unallocated sum of $5,000 per month. Without obtaining a court-ordered modification, Daniel unilaterally reduced his child support payments in May 2006 to $3,333. In May 2007, when the parties' second oldest son graduated from high school, Daniel further reduced his child support payments to $1,000 per month. As before, he did so unilaterally and without court approval. The amount of child support due each month ($5,000) was not modified by the trial court until it was subsequently reduced to $1,500 per month effective *prospectively* beginning on September 1, 2007. Thus, the parties and the trial court knew or could readily ascertain the amount of the child support obligation each month and the amount that Daniel actually paid each month. Under these facts, which were admitted by Daniel during discovery, Barbara stated that the amount of child support arrears would have been a simple matter of doing the "math." Therefore, the trial court reversibly erred when it assumed the stipulation was a bona fide settlement of a dispute and, in reliance on that assumption, failed to determine the amount of arrears owed by Daniel. We therefore remand the matter back to the trial court to determine the total amount of child support arrears due, together with accrued interest thereon.[2]

## II. Amount of Spousal Support

Once the parties' children reached the age that Daniel's obligation to pay child support ended, Barbara sought an increase in spousal support. By statute, in a proceeding where a spousal support order exists or the court has retained jurisdiction over a spousal support order, "if a companion child support order is in effect, the termination of child support … constitutes a change of circumstances that *may* be the basis for a request by

---

[2] A party entitled to support arrearages is also entitled to interest due thereon. (*In re Marriage of Hamer*, *supra*, 81 Cal.App.4th at p. 722; *In re Marriage of Perez*, *supra*, 35 Cal.App.4th at pp. 80-81.)

either party for modification of spousal support." (§ 4326, subd. (a), italics added.)  The use of the word "may" in the statute reflects that, in the circumstances indicated by the statute, a trial court would have *discretion* whether or not to grant a modification of spousal support.  (See, e.g., *Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802 ["The normal rule of statutory construction is that when the Legislature provides that a court or other decisionmaking body 'may' do an act, the statute is permissive, and grants discretion to the decision maker.  [Citations.]"].)  Barbara made such a request, asking that her existing spousal support of $2,500 per month be increased.[3]  The trial court denied Barbara's request and left intact her existing level of spousal support.  Barbara argues the trial court's ruling constituted an abuse of its discretion.

A.      Standard of Review and Statutory Criteria Regarding Spousal Support

"'Whether a modification of a spousal support order is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown.'  [Citation.]"  (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 7.)  An abuse of discretion occurs where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances.  (*Ibid*.)  A modification of spousal support is warranted where there has been a """*material* change of circumstances since the last order.  [Citations.]"""  (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899, italics added.)  Generally, a """[c]hange of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or

---

**3**      Section 4326, subdivision (b), requires that a motion to modify spousal support under the circumstances set forth in section 4326, subdivision (a) "shall be filed by either party no later than six months from the date the child support order terminates." Barbara's request for modification was filed within that deadline.

8.

decrease in the supported spouse's needs. [Citations.]  It includes all factors affecting need and the ability to pay.  [Citation.]"'"  (*Ibid.*)

In deciding whether to modify a spousal support order, a trial court considers the same criteria set forth in section 4320 as it considered in making the initial order.  (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 247; *In re Marriage of Bower*, *supra*, 96 Cal.App.4th at p. 899.)  Specifically, section 4320 provides as follows:

> "In ordering spousal support under this part, the court shall consider all of the following circumstances:
>
> "(a)    The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:
>
> "(1)    The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.
>
> "(2)    The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.
>
> "(b)    The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.
>
> "(c)    The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.
>
> "(d)    The needs of each party based on the standard of living established during the marriage.
>
> "(e)    The obligations and assets, including the separate property, of each party.
>
> "(f)    The duration of the marriage.

"(g)     The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h)     The age and health of the parties.

"(i)     Documented evidence of any history of domestic violence .…

"(j)     The immediate and specific tax consequences to each party.

"(k)     The balance of the hardships to each party.

"(l)     The goal that the supported party shall be self-supporting within a reasonable period of time.…

"(m)     The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325.

"(n)     Any other factors the court determines are just and equitable."

Of course, a trial court has *broad* discretion in balancing the statutory factors of section 4320.  (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442-1443.)  "'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.'  [Citations.]" (*Ibid.*)  Moreover, "'[a] judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations]." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; accord, *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 82, fn. 5.)

B.     The Trial Court's Order Denying Increased Spousal Support

Here, the trial court heard the evidence and arguments presented by both parties and issued a careful and detailed written order on March 28, 2012, which order expressly considered all of the statutory criteria set forth in section 4320.  We briefly summarize the trial court's evaluation and balancing of the statutory criteria, as set forth in its order.

10.

The trial court first referenced as background the preceding support orders, including the 2004 judgment under which Daniel was ordered to pay $5,000 per month in unallocated child support and $2,500 per month in spousal support. At that time in 2004, Daniel had gross income of $505,000 per year plus $106,000 in added back depreciation each year, while Barbara had gross income of $39,000[4] per year. The trial court noted that in the fall of 2007, it reduced child support to $1,500 per month effective September 1, 2007. In connection with that same hearing, Barbara requested an upward modification of child support, which was denied. When Barbara's 2007 request was denied, Daniel had gross income of $52,833 per month and Barbara had gross income of $5,853 per month, with additional taxable income of $2,000. Barbara's latest motion or order to show cause (the subject of the present appeal) was filed on September 30, 2011, and sought "to modify spousal support as a result of the youngest child's emancipation and termination of the child support order." According to the trial court, Barbara's request claimed that "two of the adult sons live primarily with her and that the third son lives with her when he is on breaks from Cal Poly."

The trial court then proceeded to consider in depth the statutory factors enumerated in section 4320. We shall highlight many of the factors here. The trial court first considered "[t]he extent to which the earning capacity of each party [was] sufficient to maintain the standard of living established during the marriage, taking into account …
[¶] the marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills, and the possible need for retraining or education to acquire other, more marketable skills for employment." (§ 4320, subd. (a)(1).) The trial court found that during their marriage, "the parties enjoyed an upper middle class

<hr>

4       The order said $3,900 per year, but at oral argument in this appeal, both counsel agreed that the correct amount was $39,000 per year.

11.

standard of living." Although, at the time of their separation in 2002, Barbara's gross income was only $2,506 per month, "[c]urrently, [Barbara] makes $7,246.00 per month through her position at San Joaquin College." The trial court commended her for "obtaining the education and experience necessary to achieve her potential."

Next, the trial court considered "[t]he extent to which the supported party's present or future earning capacity [was] impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties." (§ 4320, subd. (a)(2).) The trial court noted that when the children were young, there was a period of time that Barbara was the primary parent responsible for the needs of the children. Nevertheless, the trial court found "the evidence is clear that both parties were actively involved in the children's lives." Moreover, at present, "[a]ll of the children are adults and there is no evidence that their needs will impair [Barbara's] ability to maintain employment."

"[T]he extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party" was considered. (§ 4320, subd. (b).) The trial court commented: "[Daniel] was able to complete his residency in rheumatology during the marriage, while [Barbara] cared for the children. [Barbara] was trained and licensed as a dentist, but did not practice after [Daniel] completed his residency and established his practice while she cared for the children of the marriage."

The trial court assessed "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living." (§ 4320, subd. (c).) The trial court found that Daniel clearly had the ability to pay increased spousal support and had an "upper class" standard of living. "He claims to be paid $57,478.00 per month and lists monthly expenses of approximately $30,000.00 per month including mortgages on the family home of $4,352.00 per month, a home in Shaver Lake of $4,424.00 per month and a

12.

home in Cayucos of $3,600.00 per month. He claims to spend $2,500.00 per month on entertainment and vacations and $600.00 per month on charitable contributions."

"The needs of each party based on the standard of living established during the marriage" were then considered. (§ 4320, subd. (d).) On this issue, the trial court found as follows: "Based on the evidence submitted, [Daniel] is able to continue paying spousal support without affecting his ability to meet his needs. His current standard of living is at least the same, if not better, than the standard of living the parties enjoyed during the marriage. [Barbara] did not present evidence regarding her current standard of living, however the Court can infer from her Income and Expense declaration that she continues to enjoy the upper middle class standard of living she enjoyed during marriage. She has no house payment, but pays over $1,000.00 per month on taxes, insurance and maintenance for the home. She makes $650.00 per month in charitable contributions and sets aside $793.00 per month for entertainment, gifts and vacations. She claims an expense of $400.00 per month for her adult son's personal trainer and $1,400.00 per month for groceries, household supplies and food eating out. Her monthly expenses … are $7,988.00."

As required, the trial court took into account "[t]he obligations and assets, including the separate property, of each party." (§ 4320, subd. (e).) In addition to what was already referred to above, the trial court noted that "[b]oth parties have substantial separate property estates. [Barbara] lists approximately $334,000.00 in deposit accounts and $500,000.00 in real property equity. [Daniel] lists $271,000.00 in deposit accounts and $776,000.00 in real property equity."

The trial court considered the "duration of the marriage" (§ 4320, subd. (f)), noting that the parties had been married nearly 20 years, and that Daniel had been paying support for almost 10 years. The additional statutory criteria listed in section 4320, subdivisions (g), (h), (i) and (j) were briefly discussed by the trial court, including the factors of age and health. On the latter point, the trial court found there was no evidence

that the age or health of either of the parties was an issue affecting the level of support or the parties' ability to maintain employment. On the issue of "[t]he balance of the hardships to each party" (§ 4320, subd. (k)), the trial court found that while Daniel has the ability to pay increased spousal support, Barbara "*does not demonstrate a need* for additional spousal support *for herself*, but contends that she needs additional spousal support to continue to support the adult children that reside with her, or stay with her on breaks from college." (Italics added.) The trial court emphasized that "[b]oth parties clearly spend substantial amounts of money on their adult children."

In regard to the statutory "goal that the supported party shall be self-supporting within a reasonable period of time" (§ 4320, subd. (l)), the trial court was "mindful that [Barbara] makes approximately twice what she made at the time of separation." The trial court commended her for the efforts to become self-supporting: "[Barbara] has focused on her career and has been able to pay off her home, invest over $300,000.00 and continue to support her adult children. She is able to enjoy a very comfortable lifestyle."

Finally, the trial court discussed "[a]ny other factors the court determines are just and equitable." (§ 4320, subd. (n).) We quote this portion of the trial court's order at length, since it reflects the manner in which the trial court balanced the various statutory factors: "The Court has considered the respective incomes of the parties and notes that [Daniel] admits that he makes almost $60,000.00 per month …. [Daniel] has a very successful [medical] practice and makes income placing him in the highest standard of living in this area. The Court has considered the $1,500.00 reduction of child support to [Barbara] due to the emancipation of the remaining minor child and the substantial amount of money both parties continue to spend on their adult children, consistent with the standard of living the children enjoyed during their childhood. There is no legal requirement obligating these parents to continue to support their adult sons, however, the Court recognizes that these parties have traditionally supplied their children with material objects well beyond the necessities of life and have the means to voluntarily support the

14.

children through college and into adulthood as they desire. [¶] The Court also has considered that although [Barbara] has doubled her income since separation, if she continues in her current career, her earning capability will always be a fraction of what [Daniel] makes. [Barbara] has the ability to be self-supporting. If need were the only factor the Court considered, an award terminating spousal support could be justified. However, [Barbara] does not have the ability to support herself at the standard of living enjoyed by the parties during the marriage. To terminate spousal support at this time would create a disparity of lifestyles that would be unjust. Conversely, it would be unjust to increase spousal support, when [Barbara] has failed to demonstrate a need for additional support for herself, but solely so that she can enhance the lives of the adult children who continue to reside with her. [¶] Consequently, [Barbara's] request for an increase in spousal support is denied. [Daniel's] request for a reduction or termination of spousal support is also denied."

### C. No Abuse of Discretion Shown

We reiterate that we review this matter under the deferential abuse of discretion standard. "'Whether a modification of a spousal support order is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown.' [Citation.]" (*In re Marriage of Olson*, *supra*, 14 Cal.App.4th at p. 7.) An abuse of discretion occurs where, considering all of the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances. (*Ibid*.) We also keep in mind that the trial court "'has broad discretion in balancing the applicable statutory factors and determining the appropriate weight to accord to each, but it may not be arbitrary and must both recognize and apply each applicable factor.'" (*In re Marriage of Blazer*, *supra*, 176 Cal.App.4th at pp. 1442-1443.) It is not our role to reweigh the

15.

factors. "'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.' [Citations.]" (*Ibid.*)

It appears to us that the trial court acted within its broad discretion when it denied Barbara's request for increased spousal support. The trial court considered Barbara's increased employment income, that her home was paid off, and the fact that the parties' children were adults, when it concluded that—at the existing level of spousal support ($2,500 per month)—Barbara was able to maintain the standard of living during marriage of upper middle class. That was a non-arbitrary conclusion to draw from the evidence before it. That being the case, the mere fact that Daniel makes a great deal more money each month than Barbara was not, by itself, dispositive. And the fact that Barbara desired to further assist her adult children financially did not mandate a different result. The trial court observed that both parents assisted their adult children financially in various ways. In any event, the trial court was not required to factor the parties' able-bodied adult children into the spousal support equation. (See *In re Marriage of Serna* (2000) 85 Cal.App.4th 482, 487-493 [the court may not award support for an adult child under the guise of spousal support]; *In re Marriage of Lynn* (2002) 101 Cal.App.4th 120, 133.)

Finally, Barbara argues that the trial court's findings did not support its conclusions. Specifically, Barbara isolates the sentence in the trial court's order that "[Barbara] does not have the ability to support herself at the standard of living enjoyed by the parties during the marriage," claiming this shows that the trial court was required to grant additional support. But Barbara has taken the trial court's remark out of context. In the flow of the discussion, it appears the trial court was merely saying that spousal support should not be reduced or terminated, because apart from the continuation of existing levels of spousal support, Barbara could not support herself at the standard of living enjoyed during the marriage. (See *In re Marriage of Stephenson*, *supra*, 39 Cal.App.4th at p. 82, fn. 5 [every reasonable inference is indulged in support of the

16.

judgment].)  We therefore reject the argument that the trial court's order was not supported by its findings.

## DISPOSITION

The trial court's order regarding child support arrears is reversed, and the matter is remanded to the trial court for a determination of the amount of child support arrears and interest accrued thereon.  The trial court's order denying modification of spousal support is affirmed.  Each party shall bear their own costs on appeal.